**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | )<br>)<br>)<br>) |
| Plaintiff, | ) |
| v. | ) No. 1:13-cv-00442-RBW<br>) |
| FEDERAL BUREAU OF INVESTIGATION | )<br>)<br>) |
| Defendant. | )<br>) |

**PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS**

Plaintiff the Electronic Privacy Information Center ("EPIC") hereby moves for an order compelling Defendant Federal Bureau of Investigation ("FBI") to pay EPIC's attorneys' fees and costs in this lawsuit. EPIC's Freedom of Information Act ("FOIA") lawsuit forced disclosure of more than 2,500 pages of FBI records. The records would have otherwise remained secret. EPIC is therefore eligible to recover fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E). EPIC's fees and costs total $15,851.50 and are supported by the attached affidavits, time records, and receipts.

**FACTUAL BACKGROUND**

In a January 26, 2009 posting on the FBI's website, the agency described a biometric identification database program called "Next Generation Identification" ("NGI").[1] When completed, the NGI system will be the largest biometric database in the

---

[1] FBI: Beyond Fingerprints: Our New Identification System, http://www.fbi.gov/news/stories/2009/january/ngi_012609.

world.[2] The vast majority of records contained in the NGI database will be of US citizens, and will include fingerprints, iris scans, DNA profiles, voice identification profiles, palm prints, and photographs.[3] The NGI system will also include facial recognition capabilities.[4] It will include photographic images and other biometric identifiers of millions of individuals who are neither criminals nor suspects, whether or not those individuals are aware that their biometric identifiers were captured.[5]

The NGI system could be integrated with other surveillance technology, such as Trapwire, that would enable real-time image-matching of live feeds from CCTV surveillance cameras.[6] The Department of Homeland Security has spent hundreds of millions of dollars to establish state and local surveillance systems, including CCTV cameras that record the routine activities of millions of individuals.[7] There are an estimated 30 million surveillance cameras in the United States.[8] The NGI database will enable the identification of individuals in photographic images and in public settings, whether or not the police have made the necessary legal showing to compel the disclosure of identification documents or to obtain the actual identity of the individuals contained in the images.[9]

---

[2] *Integrated Automated Fingerprint Identification System*, FEDERAL BUREAU OF INVESTIGATION (last visited Jan. 17, 2012), http://www.fbi.gov/about-us/cjis/fingerprints_biometrics/iafis.

[3] *Next Generation Identification: Bigger-Better-Faster*, FEDERAL BUREAU OF INVESTIGATION (last visited Jan. 17, 2012), http://www.fbi.gov/about-us/cjis/fingerprints_biometrics/ngi/ngi-overview.

[4] *Privacy Impact Assessment (PIA) for the Next Generation Identification (NGI) Interstate Photo System (IPS)*, FEDERAL BUREAU OF INVESTIGATION, (June 9, 2008) [hereinafter Privacy Assessment], *available at* http://www.fbi.gov/foia/privacy-impact-assessments/interstate-photo-system.

[5] *Id.*

[6] Charles Arthur, *Trapwire surveillance system exposed in document leak*, THE GUARDIAN (Aug. 13, 2012), http://www.theguardian.com/world/2012/aug/13/trapwire-surveillance-system-exposed-leak.

[7] Charlie Savage, *US Doles Out Millions of Street Cameras*, BOSTON (Aug. 12, 2007), http://www.boston.com/news/nation/washington/articles/2007/08/12/us_doles_out_millions_for_street_cameras/.

[8] James Vlahos, *Surveillance Society: New High-Tech Cameras Are Watching You*, POPULAR MECHANICS (Oct. 1, 2009), http://www.popularmechanics.com/technology/military/4236865.

[9] Privacy Assessment, *supra* at 4.

The FBI is pursuing an aggressive deployment of the NGI program.[10] Among the private contractors involved are Lockheed Martin, IBM, Accenture, BAE Systems Information Technology, Global Science & Technology ("GST"), Innovative Management & Technology Services ("IMTS"), and Platinum Solutions.[11] Further, the States of Arizona, Hawaii, Kansas, Maryland, Michigan, Missouri, Nebraska, New Mexico, Ohio, South Carolina, and Tennessee are actively participating in the NGI program.[12]

### EPIC Filed EPIC's First FOIA Request and EPIC's Second FOIA Request and Constructively Exhausted Administrative Remedies

In order to allow the public to assess the privacy risks inherent in the NGI program, on September 20, 2012, EPIC transmitted a Freedom of Information Act request ("EPIC's First FOIA Request") to the FBI via facsimile for agency records consisting of "all contracts between the FBI and Lockheed Martin, IBM, Accenture, BAE Systems Information Technology, Global Science & Technology, Innovative Management & Technology Services, Platinum Solutions, the National Center for State Courts, or other entities concerning the NGI." On September 21, 2012, EPIC transmitted another FOIA request (EPIC's Second FOIA Request") to the FBI via facsimile for agency records consisting of "all technical specifications, documents, and/or statements of work relating to the FBI's development, implementation, and use of technology related to NGI."

---

[10] Aliya Sternstein, *FBI to Launch Nationwide Facial Recognition Service*, NEXTGOV (Oct. 7, 2011), http://www.nextgov.com/nextgov/ng_20111007_6100.php.

[11] *IBM Joins the Lockheed Martin Team for FBI's Next Generation Identification Program*, IBM (May 2, 2008), http://www-03.ibm.com/press/us/en/pressrelease/24122.wss

[12] *Hearing on What Facial Recognition Technology Means for Privacy and Civil Liberties*, U.S. Senate (2012) (statement of Jerome M. Pender, Deputy Assistant Director, Criminal Justice Information Services Division, F.B.I.), *available at* http://www.judiciary.senate.gov/hearings/testimony.cfm?id=daba530c0e84f5186d785e4894e78220&wit_id=daba530c0e84f5186d785e4894e78220-0-9.

In both FOIA requests, EPIC asked the FBI for expedited processing since EPIC is primarily engaged in disseminating information, and the requests pertained to an actual or alleged federal government activity about which there was an urgency to inform the public. EPIC also requested "News Media" fee status, based on its well-established status as a "representative of the news media." *EPIC v. DoD*, 241 F. Supp. 2d 5 (D.D.C. 2003). Additionally, EPIC asked for fee waiver. *Id.*

On September 26, 2012, the FBI acknowledged receipt of EPIC's First FOIA Request and assigned the request reference number 1199133. The FBI made no determination regarding the substance of EPIC's document request, EPIC's request for expedited processing, EPIC's request for fee waiver or EPIC's request for "news media" fee status. On October 3, 2012, the FBI rejected EPIC's request for expedited processing of EPIC's First FOIA Request.

On September 26, 2012, the FBI acknowledged EPIC's Second FOIA Request and assigned the request reference number 1199125. The FBI made no determination regarding the substance of EPIC's document request, EPIC's request for expedited processing, EPIC's request for fee waiver or EPIC's request for "news media" fee status. On October 3, 2012, the FBI rejected EPIC's request for expedited processing of EPIC's Second FOIA Request.

On October 5, 2012, the FBI informed EPIC that it had located 7,380 pages of potentially responsive documents and invited EPIC to narrow the scope of EPIC's Second FOIA Request. On October 19, 2012, EPIC spoke with Debbie Beatty at the FBI's FOIA office and discussed narrowing EPIC's Second FOIA Request and also EPIC's fee waiver status. On October 21, 2012, EPIC transmitted to the FBI, via facsimile, EPIC's Revised Second FOIA Request that narrowed the documents sought to "all technical specifications

regarding the FBI's development, implementation, and use of technology related to Next Generation Identification ('NGI') in the following states: Florida, Michigan, Washington, and North Carolina."

EPIC received no further communications from the FBI regarding any of the Requests. This constituted a constructive denial of EPIC's FOIA Requests.

**EPIC Filed Suit After the Agency Failed to Produce Any Documents Responsive to EPIC's Requests**

EPIC filed suit against the FBI on April 8, 2013, after the agency failed to respond to either of EPIC's Requests or to EPIC's Revised Second FOIA Request. Through April 8, 2013, the date of the complaint, the FBI had not contacted EPIC again regarding the status of any of the requests, nor had the FBI disclosed a single agency record in response to any of the requests.

**In Response to EPIC's Lawsuit, the FBI Disclosed Responsive Documents**

The FBI filed its Answer to EPIC's Complaint on May 22, 2013. On June 28, 2013, the court set a document production schedule, ordering the FBI to produce all non-exempt responsive records to by August 30, 2013, with an interim production by July 31. Pursuant to that Order, the FBI released 517 pages of documents on July 31, 2013, and a further 1,406 pages of documents on August 30, 2013. After reviewing the releases, EPIC identified a missing record and requested that the FBI produce that document as well. The FBI provided EPIC with that document, consisting of 539 pages, on November 1, 2013.

Following the November 1, 2013 release, the parties agreed that no outstanding legal issues remained in the case and engaged in settlement negotiations. However, the parties were unable to reach an agreement.

EPIC now seeks to recover fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).

## **STANDARD OF REVIEW**

Before a court may award attorneys' fees in FOIA cases, it must first determine whether the plaintiff is eligible for a fee award. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). The FOIA provides that in a lawsuit, "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "A complainant has substantially prevailed if the complainant has obtained relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).

If a plaintiff is eligible, the court must then determine whether the plaintiff is entitled to recover fees. *Id*. This Circuit employs a four-factor balancing test to determine a plaintiff's entitlement to attorney's fees. "The court should consider [four factors] in determining the appropriateness of an award of costs and attorney fees." *Judicial Watch, Inc. v. U.S. Dep't of Commerce,* 470 F.3d 363, 369 (D.C. Cir. 2006). The four factors are: 1) "the benefit to the public, if any, deriving from the case;" 2) "the commercial benefit of the complainant;" 3) "the nature of [the complainant's] interest in the records sought"; and 4) "whether the government's withholding of the records sought had a reasonable basis in law." *Id.* (citing *Davy v. C.I.A.*, 456 F.3d 162, 166 (D.C. Cir. 2006)).

**I. EPIC Is Eligible for and Entitled to Recover Its Costs and Fees**

EPIC is entitled to recover its fees and costs from the FBI in this matter. EPIC

asks the Court to enter judgment as to EPIC's eligibility and entitlement to fees and to award EPIC $15,851.50.

### A. EPIC Meets the Requirements for Eligibility Under the FOIA

EPIC is eligible for fees under the FOIA because EPIC "substantially prevailed" in this case. 5 U.S.C. § 552(a)(4)(E). "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." *Id.* "A complainant has substantially prevailed if the complainant has obtained relief through … a judicial order, or an enforceable written agreement or consent decree. …" 5 U.S.C. § 552(a)(4)(E)(II). Furthermore, the D.C. Circuit has ruled that a proposed scheduling order that is adopted by the court qualifies as a "judicial order, or an enforceable written agreement or consent decree" under the FOIA. Where a FOIA plaintiff obtains documents pursuant to the court's adoption of a joint stipulation, the plaintiff prevails, since "the parties had stipulated that the defendant agency would produce the requested records by a date certain and the trial court approved the parties' joint stipulation." *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 228 (D.D.C. 2011) *appeal dismissed*, 2011 U.S. App. LEXIS 19822, 11-5140, 2011 WL 3903437 (D.C. Cir. Aug. 10, 2011); *Davy*, 456 F.3d at 166 (holding that the plaintiff prevailed when he received documents pursuant to a court-adopted scheduling order, since the agency "was not under any judicial direction to produce documents by specific dates; the … order changed that by requiring the Agency to produce all 'responsive documents' by the specified dates").

EPIC has "substantially prevailed" as to the almost 2,500 pages of documents it obtained from the FBI pursuant to a court order. On June 26, 2013, EPIC and the FBI

agreed to a joint proposed briefing schedule, which included a timeline for document production. The court adopted this schedule and issued its Order on June 28, 2013. It was only pursuant to this Order that the FBI produced the first set of documents. EPIC received the agency's first substantive response on July 31, 2013, almost four months after filing suit. EPIC received a second substantive response on August 30, 2013, on the last day of the production period allowed by the court's Order. EPIC plainly obtained relief under the FOIA through an "enforceable written agreement" – the joint briefing schedule – that was subsequently adopted as a judicial order.  As in *Judicial Watch* and *Davy*, the court's adoption of the Proposed Joint Scheduling Order compelled the agency to disclose responsive documents according to a set timeline. EPIC therefore "substantially prevailed."

### B.  EPIC has Satisfied the Four-Pronged Test for Entitlement to Fees

EPIC is also entitled to fees under the four-factor test employed by this Circuit. The court should consider "four criteria in determining whether a substantially prevailing FOIA litigant is entitled to attorney's fees: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Davy*, 550 F.3d at 1159. *See also Morley v. CIA,* 719 F.3d 689, 690 (D.C. Cir. 2013) (reaffirming the four-factor test outlined in *Davy*).

#### a.  EPIC Satisfies the "Public Benefit" Prong

The "public benefit" prong of the four-factor test easily weighs in EPIC's favor. "Public benefit" can be demonstrated by a "newsman who seeks information to be used

in a publication or the public interest group seeking information to further a project benefitting the general public." *Davy*, 550 F.3d at 1158. The "public benefit" factor supports an award where the complainant's victory is "likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citations omitted). *See also Davy*, 550 F.3d at 1164 (reaffirming the "public benefit" analysis in *Cotton*). This Court has found that news media coverage is relevant for determining "public benefit." *EPIC v. U.S. Dept. of Homeland Sec.,* 811 F. Supp. 2d 216, 233-34 (D.D.C. 2011).

EPIC's FOIA suit provided substantial benefit to the public. EPIC maintains two of the most popular websites in the world - www.epic.org and www.privacy.org - for searches on the term "privacy." EPIC disseminated the agency records it received on its www.epic.org web site and to the approximately 8,000 recipients of its bi-weekly newsletter. [13] EPIC's FOIA work in this matter was prominently featured in the *New York Times* as well as several other publications:

> The Department of Homeland Security is not the only agency developing facial-surveillance capacities. The Federal Bureau of Investigation has spent more than $1 billion on its Next Generation Identification program, which includes facial-recognition technology. This technology is expected to be deployed as early as next year and to contain at least 12 million searchable photos. The bureau has partnerships with at least seven states that give the agency access to facial-recognition-enabled databases of driver's license photos.
>
> State agencies are also participating in this technological revolution, though not yet using video cameras. On Monday, Ohio's attorney general, Mike DeWine, confirmed reports that law enforcement officers in his state, without public notice, had deployed facial-recognition software on its driver's license photo database, ostensibly to identify criminal suspects.

---

[13] http://epic.org/foia/fbi/ngi/

> A total of 37 states have enabled facial-recognition software to search driver's license photos, and only 11 have protections in place to limit access to such technologies by the authorities.
>
> Defenders of this technology will say that no one has a legitimate expectation of privacy in public. But as surveillance technology improves, the distinction between public spaces and private spaces becomes less meaningful. There is a vast difference between a law enforcement officer's sifting through thousands of hours of video footage in search of a person of interest, and his using software to instantly locate that person anywhere, at any time.

Ginger McCall, "The Face-Scan Arrives," *New York Times*, Aug. 29, 2013 ("Last week, thanks in part to documents that I and the Electronic Privacy Information Center obtained under the Freedom of Information Act, the American public learned that the Department of Homeland Security is making considerable progress on a computerized tool called the Biometric Optical Surveillance System.")[14] *See also* J.D. Tuccille, "Wrong Person May Be Identified 20 Percent of the Time With Facial Recognition Software," Reason, Oct. 8, 2013;[15] Ali Winston, "Facial recognition, once a battlefield tool, lands in San Diego County," The Center for Investigative Reporting, Nov. 7, 2013;[16] Jim Stenman, "Embracing big brother: How facial recognition could help fight crime," CNN, Nov. 26, 2013;[17] Mark Reynolds, "eWave: Hunt is on for pixel-perfect criminal IDs," Providence Journal, Dec. 7, 2013.[18]

Also during that time, the development and implementation of the FBI's Next Generation ID system were widely discussed. *See* Natasha Lennard, "Government developing facial recognition surveillance software," Salon, Aug. 21, 2013;[19] Charlie

---

[14] http://www.nytimes.com/2013/08/30/opinion/the-face-scan-arrives.html
[15] http://reason.com/blog/2013/10/08/wrong-person-may-be-identified-20-percen
[16] http://cironline.org/reports/facial-recognition-once-battlefield-tool-lands-san-diego-county-5502
[17] http://www.cnn.com/2013/11/25/tech/embracing-big-brother-facial-recognition/
[18] http://www.providencejournal.com/breaking-news/content/20131207-e-wave-hunt-is-on-for-pixel-perfect-criminal-ids.ece
[19] http://www.salon.com/2013/08/21/government_developing_facial_recognition_surveillance_software/

Savage, "Facial Scanning Is Making Gains in Surveillance," New York Times, Aug. 21, 2013;[20] "The People's Panopticon," The Economist, Nov. 16, 2013;[21] Martyn Williams, "Will this robot make America safer?," CIO Magazine, Dec. 5, 2013;[22] Michael Cooney, "US intelligence wants to radically advance facial recognition software," Network World, Dec. 13, 2013.[23]

EPIC's FOIA work in this case also assisted in EPIC's Spotlight on Surveillance project.[24] The Spotlight on Surveillance project provides detailed analysis of various systems of surveillance to educate the public on the surveillance programs and the threats they pose to privacy and civil liberties. The documents obtained in this case feature prominently in EPIC's most recent Spotlight on Surveillance.[25]

### b. The Nature of EPIC's Interest Is Entirely Public-Oriented and Non-Commercial

The "nature of the [complainant's] interest" factor is "closely related [to] and often considered together with the commercial benefit criterion." *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992). "The second factor considers the commercial benefit to the plaintiff, while the third factor considers the plaintiff's interest in the records." *EPIC v. DHS*, CV 11-2261(JDB), 2013 WL 6047561 (D.D.C. Nov. 15, 2013). Favored interests are "scholarly, journalistic or public-interest oriented." *See Long v. IRS*, 932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a lower court's ruling that the plaintiff's scholarly interest weighed against her recovery of fees was "wrong as a matter

---

[20] http://www.nytimes.com/2013/08/21/us/facial-scanning-is-making-gains-in-surveillance.html
[21] http://www.economist.com/news/briefing/21589863-it-getting-ever-easier-record-anything-or-everything-you-see-opens
[22] http://www.cio.com.au/article/533537/will_robot_make_america_safer_/
[23] http://www.networkworld.com/community/blog/us-intelligence-wants-radically-advance-facial-recognition-software
[24] EPIC: Spotlight on Surveillance, http://epic.org/privacy/surveillance/spotlight/.
[25] EPIC: Spotlight on Surveillance – December 2013: The FBI's Next Generation Identification Program, http://epic.org/privacy/surveillance/spotlight/ngi.html.

of law and an abuse of discretion"). EPIC is a 501(c)(3) non-profit public interest research center. *EPIC,* 241 F. Supp. 2d at 5. EPIC derived no commercial benefit from its FOIA request or lawsuit. The sole benefit was derived by the public, which benefited from the disclosure of the documents released in this case. Thus, EPIC's interest in this matter is squarely within the "scholarly, journalistic or public interest oriented" interests favored by the statute. *See, e.g., EPIC v. DHS.,* 760 F. Supp. 2d 4, 44 (D.D.C. 2011) ("[EPIC's] aims, which include dissemination of information regarding privacy issues to the public, . . . fall within the scholarly and public-interest oriented goals promoted by FOIA").

### c. The FBI Did Not Have a "Reasonable Legal Basis" For Withholding Records

The FBI did not have a "reasonable legal basis" for failing to disclose records to EPIC. The Bureau's delay in replying to EPIC's requests plainly violated the FOIA's statutory deadlines. *See* 5 U.S.C. § 552(a)(6)(A). As described in EPIC's Complaint, the FBI violated statutory deadlines by failing to make a timely determination concerning EPIC's administrative requests.

The FBI has cited no legal basis in opposition to EPIC's claims regarding the untimeliness of the agency's response – in fact, the FBI has not attempted to account for the delay at all. EPIC was forced to sue the FBI in order to obtain critical information concerning the technical and contractual details of the Next Generation Identification database. The FBI had no reason or legal basis to withhold these records. The agency must reimburse EPIC for its costs and fees.

### II. EPIC's Attorneys' Fees and Costs are Reasonable

### A. EPIC Requests $15,851.50 in Costs and Fees

EPIC's fees and costs incurred in this matter are set forth in detail in Exhibit 1 – "EPIC's Bill of Fees and Costs." EPIC moves the Court to award EPIC a total of $15,851.50 – $15,501.50 in attorneys' fees and $350 in costs. EPIC's request for attorneys' fees is supported by contemporaneously-recorded time records kept by EPIC's attorneys. Exhibits 1-7. EPIC's request is further supported by Affidavits. Brody Aff.; McCall Aff.; Horwitz Aff.; Rotenberg Aff; Scott Aff. EPIC's request for costs is supported by evidence on the case docket – the clerk of this Court assigned receipt number 0090-3275636 to EPIC's payment of the filing fee in this matter. As set forth below, EPIC's fees and costs in this matter are reasonable.

### B. The Laffey Matrix Provides a Reasonable Minimum Basis for Calculating EPIC's Fees

To determine whether fees are reasonable, courts focus on two questions: (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable - *i.e.,* did the attorneys waste or otherwise unnecessarily spend time on the matter. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011) (*Judicial Watch II*) (quoting *Bd. of Trs. Of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998).

Attorneys' fees are calculated based on the "lodestar," which is the number of hours the lawyers reasonably spent on the case multiplied by the lawyers' hourly rates. *Id*. A lawyer's hourly rate is measured by its fair market value, "regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The District of Columbia Circuit has concluded that the second prong of the equation for calculating a fee award -- the reasonableness of hourly rates awarded under

fee-shifting statutes -- consists of 'at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'" *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135 (D.D.C. 2007) *citing Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). "For public-interest or government lawyers who do not have customary billing rates, courts in this circuit have frequently employed the 'Laffey Matrix,' a schedule of fees based on years of attorney experience." *Judicial Watch II*, 774 F. Supp. 2d at 232; *see also Covington v. District of Columbia*, 57 F.3d 1101, 1105-12 (D.C. Cir. 1995) (affirming a fee award calculated using the Laffey matrix).  EPIC billed time for this matter using the Laffey Matrix as the basis for its calculations. The Laffey Matrix is published by the Department of Justice at: http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html and is attached as Exhibit 8.

Further, the D.C. Circuit "has been very explicit about what documentation is necessary to recover attorney's fees." *Weisberg v. Webster*, 749 F. 2d 864, 872 (D.C. Cir. 1984). To recover, the movant must provide "contemporaneous, complete, and standardized time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). *See also EPIC v. DHS*, CV 11-2261(JDB), 2013 WL 6047561 (D.D.C. Nov. 15, 2013). EPIC has provided complete, detailed billing records, which were contemporaneously recorded and accurately reflect the work done by each attorney. The records reflect the date, time, and nature of each activity, and often include details about the specific work performed. Each entry is clearly labeled with the name of the attorney performing the work, that

attorney's rate, the hours of work performed on the activity, and the total amount charged for the activity. EPIC has therefore satisfied the D.C. Circuit's documentation requirements for fee recovery.

**III. EPIC is Entitled to Recover "Fees on Fees"**

EPIC is entitled to recover fees on fees for the time spent litigating the fee issue against the FBI. "It is settled in this circuit that hours reasonably devoted to a request for fees are compensable." *Judicial Watch II*, 878 F. Supp. 2d at 240 (citations omitted). *See also EPIC v. DHS,* 811 F. Supp. 2d 216, 237 (D.D.C. 2011) ("It is a common practice in this jurisdiction to award fees on fees in FOIA cases"); *Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Veteran Affairs,* 1999 WL 33740260, at *2 (D.D.C. Apr. 13, 1999)) (court awards fees on fees following a determination that "the hours spent by the plaintiff on these tasks were reasonably expended and do not constitute a 'windfall' for the attorneys.") Further, this Court has found that EPIC specifically may recover "fees on fees" in FOIA litigation. *EPIC v. DHS*, CV 11-2261(JDB), 2013 WL 6047561 (D.D.C. Nov. 15, 2013) (holding that "there is no reason to treat FOIA's fee-shifting provision differently than those for which the D.C. Circuit has approved awards of 'fees on fees.' [] Hence, EPIC is entitled to a reasonable award of attorney's fees for litigating this motion").

## CONCLUSION

As discussed above, EPIC substantially prevailed in this lawsuit, thereby triggering the FOIA's fee-shifting provision. EPIC is eligible for and entitled to recover its fees and costs from the FBI in this matter. EPIC's fees are reasonable and supported by the attached affidavits and time records. EPIC moves the Court to award EPIC

$15,851.50 in fees and costs. A proposed Order is attached.

                                          Respectfully submitted,

                                                  */s/ Marc Rotenberg*
                                        MARC ROTENBERG (DC Bar # 422825)
                                        Electronic Privacy Information Center
                                        1718 Connecticut Ave. NW
                                        Suite 200
                                        Washington, DC 20009
                                        202-483-1140
                                        *Counsel for Plaintiff*

Dated: December 13, 2013