UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION | ) |
| | ) |
| Defendant. | ) |

Civil Action No.
13-cv-442  (RBW)

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS**

STUART F. DELERY
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

MARCIA K. SOWLES
DC Bar No. 369455
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7114
Washington, D.C.  20530
Tel.: (202) 514- 4960
Fax: (202) 616- 8470
E-mail:  marcia.sowles@usdoj.gov

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS .....................................................................................................2

ARGUMENT .........................................................................................................................6

I.      LEGAL STANDARDS ...............................................................................................6

II.     EPIC SHOULD NOT BE DEEMED "ELIGIBLE" FOR ATTORNEYS'
FEES AND COSTS ....................................................................................................8

III.    EPIC IS NOT ENTITLED TO ATTORNEYS' FEES AND COSTS ............................10

        A.      The Disclosed Records Did Not Benefit the Public.................................11

        B.      The FBI Had a Reasonable Basis for its Action .....................................15

IV.    THE $15,851.50 SOUGHT BY EPIC IS UNREASONABLE.........................................18

        A.      The Hours Spent for Drafting, Reviewing, Discussing and Filing the
Complaint Is Unreasonable and Should be Significantly Reduced .......................18

        B.      EPIC Is Not Entitled to Fees for Reviewing Documents and Other
Work Performed After Obtaining the Scheduling Order .......................................19

        C.      Even If EPIC Were Entitled to Fees for Some Work Performed After
The Issuance of the Scheduling Order, the Number of Hours Claimed for
Such Work Is Unreasonable and Should be Reduced............................................22

        D.      The Hourly Rate Sought By EPIC for Work Done by David Brody,
Julie Horwitz and Jeramie Scott Should be Reduced to $195 ..............................24

        E.      EPIC's Recovery of Fees on Fees, if any, Should Be Adjusted
Downward to the Extent Its Fees Petition is Unsuccessful....................................25

CONCLUSION......................................................................................................................26

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Aerotronics, Inc. v. United States,*
    943 F.2d 1344 (D.C. Cir. 1991) ........................................................................ 22

*Ajluni v. FBI,*
    947 F. Supp. 599 (N.D.N.Y. 1996) .................................................................... 20

*Alliance for Responsible CFC Policy v. Costle,*
    631 F. Supp. 1469 (D.D.C. 1986) ...................................................................... 12

*Baker v. D.C. Public Schools,*
    815 F. Supp. 2d 102 (D.D.C. 2011) .................................................................... 25

*Brayton v. Office of U.S. Trade Representative,*
    641 F.3d 521 (D.C. Cir. 2011) .................................................................... 6, 7, 9

*Brown v. Stackler,*
    612 F.2d 1057 (7th Cir. 1980) ............................................................................ 7

*Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human,*
    Res., 532 U.S. 598 (2001) .................................................................................... 9

*Church of Scientology v. U.S.P.S.,*
    700 F.2d 486 (9th Cir. 1983) ............................................................................. 15

*Citizens for Responsibility & Ethics in Wash. V. DOJ,*
    820 F. Supp. 2d 39 (D.D.C. 2011) ...................................................................... 9

*Comm'r, I.N.S. v. Jean,*
    496 U.S. 154 (1990) ........................................................................................... 25

*Copeland v. Marshall,*
    641 F.2d 880 (D.C. Cir. 1987) ........................................................................... 24

*Cotton v. Heyman,*
    63 F.3d 1115 (D.C. Cir. 1995) ............................................................... 10, 11, 15

*Coulter v. Tennessee,*
    805 F.2d 146 (6th Cir. 1986) ............................................................................. 26

*Davy v. C.I.A,,*
    456 F.3d 162 (D.C. Cir. 2006) ........................................................................ 8, 9

*Davy v. CIA,,*
    550 F.3d 1144 (D.C. Cir. 2008) ........................................................................... 7

*Dickens v. Friendship-Edison P.C.S.,*
    724 F. Supp. 2d 113 (D.D.C. 2010) ................................................................... 25

*Electronic Privacy Information Center v. U.S. Dept. of Homeland Security,*
    No. 10-1992, 2013 WL 5620891 (D.D.C. Oct. 15, 2013) ..................................... 23

*Ellis v. United States,*
    941 F. Supp. 1068 (D. Utah 1996) ..................................................................... 16

*Envtl. Def. Fund, Inc. v. Reilly,*
    1 F.3d 1254 (D.C. Cir. 1993) .............................................................................. 7

*EPIC v. U.S. Dep't of Homeland Security,*
    811 F. Supp. 2d 216 (D.D.C. 2011) ................................................................... 14

*EPIC v. Dep't of Homeland Security,*
    No. 11-2261, 2013 WL 6047561 (D.D.C. Nov. 15, 2013) .............................. 15, 25

*Farris v. Cox,*
    508 F. Supp. 222 (N.D. Cal. 1981) ..................................................................... 8

*Frontier Found. v. Office of Dir. Of Nat'l Intelligence,*
    No. C 07-05278 2008 WL 2331959 (N.D. Cal. June 4, 2008) ......................... 13, 19

*Hensley v. Eckerhard,*
    461 U.S. 424 (1983) ...................................................................................... 7, 22

*Judicial Watch, Inc. v. Dep't of Justice,,*
    774 F. Supp. 225 (D.D.C. 2011) ......................................................................... 8

*Judical Watch, Inc. v. FBI,,*
    774 F. Supp. 2d 225 (D.D.C. 2011) ................................................................... 9

*Judicial Watch, Inc. v. FBI,*
    522 F.3d 364 (D. C. Cir. 2008) ........................................................................... 7

*Kennedy v. Andrus,*
    459 F. Supp. 240 (D.D.C. 1978) ................................................................... 19, 20

*Klimbach v. Sperion Corp.,*
    467 F. Supp. 2d 323 (W.D.N.Y. 2006) ............................................................... 23

*Lane v. Peña,,*
    518 U.S. 187 (1996) ............................................................................................ 19

*LaShawn A. v. Barry,*
    1998 WL 35243112 (D.D.C. Feb. 18, 1998) ...................................................... 26

*Laughlin v. Comm'r,*
    117 F. Supp. 2d 997 (S.D. Cal. 2000) ................................................................ 11

*Lipsett v. Blanco,*
    975 F.2d 934 (1st Cir. 1992) .............................................................................. 24

*Long v. IRS,*
    932 F.2d 1309 (9th Cir. 1991) .............................................................................. 7

*N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau,*
    563 F. Supp. 2d 217 (D.D.C. 2008) ............................................................... 7, 20

*National Veterans Legal Servs. Program v. U.S. Dep't of Veterans Affairs,*
    No. 96-CV-01740, 1999 WL 33740260 (D.D.C. Apr. 13, 1999)........................... 25

*Pohl v. EPA,*
    No. 09-1480, 2012 WL 762083 (W.D. Pa. March 7, 2012) ................................. 10

*Ramos v. Lamn,,*
    713 F.2d 546 (10th Cir. 1983) ............................................................................ 22

*Read v. Federal Aviation Admin.,*
    252 F. Supp. 2d 1108 (W.D. Wash. 2003).......................................................... 15

*Simon v. United States,*
    587 F. Supp. 1029 (D.D.C. 1994)................................................................. 15, 16

*Steenland v. CIA,*
    555 F. Supp. 907 (W.D.N.Y. 1983) .................................................................... 20

*Tax Analysts v. Dep't of Justice,*
    965 F.2d 1092 (D.C. Cir. 1992).............................................................. 7, 11, 16

*Uhuru v. U.S. Parole Comm'n,*
    734 F. Supp. 2d 8 (D.D.C. 2010)................................................................. 20, 21

*United America Financial, Inc. v. Potter,*
    770 F. Supp. 2d 252 (D.D.C. 2011) .................................................................... 16

*Waage v. IRS*,
   656 F. Supp. 2d 1235 (S.D. Cal. 2009) ..................................................................................... 10

*Webman v. Fed. Bureau of Prisons*,
   441 F.3d 1022 (D.C. Cir. 2006) ............................................................................................... 19

*Weisberg v. U.S. Dep't of Justice*,
   745 F.2d 1476 (D.C. Cir. 1984) ............................................................................................... 22

## <u>STATUTES</u>

5 U.S.C. § 552(a)(4) ..................................................................................................... <u>passim</u>

## <u>REGULATIONS</u>

28 C.F.R. § 16.11 ............................................................................................................... 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | Civil Action No. |
| ) | 13-cv-442   (RBW) |
| ) | |
| FEDERAL BUREAU OF INVESTIGATION  ) | |
| ) | |
| Defendant.  ) | |

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS**

**INTRODUCTION**

Defendant Federal Bureau of Investigation ("FBI") opposes Plaintiff Electronic Privacy Information Center's ("EPIC's") motion for $15,851.50 in attorney fees and costs under the fee provision of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E).  EPIC's motion should be denied. Contrary to EPIC's assertion, this lawsuit did not "force[] the disclosure" of records that "would have otherwise remained secret."  Plaintiff's Motion for Attorney Fees and Costs ("Pl. Motion") at 1. While the FBI did not complete its production of the records within FOIA's twenty day time period, the FBI did not simply ignore the request. Instead, the FBI had promptly initiated searches and began gathering the responsive documents.  Due to the backlog of prior FOIA requests and limited resources, the FBI was unable to complete its processing before EPIC filed this lawsuit. The FBI made a good faith effort to produce the records as soon as possible, however, making productions on June 6, July 31 and August 30, 2013.  The FBI made only a very limited number of redactions, none of which EPIC challenged.

Under these circumstances, EPIC's motion should be denied. First, EPIC is not eligible for fees because the Scheduling Order setting a briefing schedule for dispositive motions should not be treated as an order providing it with relief.  Second, even if EPIC were eligible for fees, EPIC is not entitled to fees because the release of records in question did not have a "public benefit" and because any initial "withholding" by the FBI was a function of delay due to backlog of prior requests and FBI's limited resources, not bad faith or obduracy.  Third, even if EPIC were entitled to some fees, the amount sought is not reasonable. Any fees should be limited to a reasonable time for work done prior to the issuance of the scheduling order, which is the only arguable relief EPIC can be said to have received as a result of this action.  Moreover, EPIC should not be compensated for unreasonable hours due to overstaffing and unnecessary tasks. Finally, the hourly rate for its attorneys who had been admitted to a bar for less than one year at the time that they performed the work should be adjusted from $245 to $195. Accordingly, EPIC's request should be denied in its entirety or substantially reduced.

## STATEMENT OF FACTS

On September 20, 2012, EPIC submitted a FOIA request to FBI for information regarding "all contracts between the FBI and Lockheed Martin, IBM, Accenture, BAE Systems Information Technology, Global Science & Technology (GST), Innovative Management & Technology Services (IMTS), Platinum Solutions, the National Center for State Courts (NCSC), or other entities concerning the Next Generation Identification system (NGI)."  Exhibit A to Declaration of David Hardy ("Hardy Decl.") (Exhibit 1).  The FBI acknowledged receipt of this request by letter dated September 26, 2012.  Hardy Decl. ¶ 8.[1]  Within days of receiving the

---

[1] In its letter, the FBI informed EPIC that its request for expedited processing and fee waiver were being considered and that it will be advised of the decision at a later date.  Hardy Decl. ¶ 8. The FBI denied EPIC's request for expedited processing by letter dated October 3, 2012.  *Id.* ¶

request, its Record/Information Dissemination Section ("RIDS") directed the request to the Record Management Group ("RMG") of the FBI's Criminal Justice Information Service Division ("CJIS").  *Id.* ¶ 9.  RMG then reached out to the NGI Program Office ("NGIPO") for location of the records and guidance on how the records should be processed.  *Id.*  NGIPO conducted a search for the responsive records, which were then in January forwarded to RIDS for processing. *Id.*  RIDS then placed the records in the backlog of pending FOIA request.  *Id.* Additional records were located and added in March 2013.  *Id.*

On September 21, 2012, one day after it submitted its first FOIA request, EPIC submitted another FOIA request relating to the NGI Program.  Exhibit G to Hardy Decl.  In this request, EPIC sought "all technical specifications regarding the FBI's development, implementation, and use of technology related to Next Generation Identification ('NGI')."  *Id.*  The FBI acknowledged receipt of this request by letter dated September 26, 2012.  Hardy Decl. ¶ 17.[2]

By letter dated October 5, 2012 the FBI notified EPIC that it had "located approximately 7,380 pages which are potentially responsive to the second FOIA".  *Id.* ¶ 19.  The FBI further advised EPIC that pursuant to U.S. Department of Justice ("DOJ") regulations, 28 C.F.R. § 16.11, duplication fees applied to this request and that it would owe $728.00 to receive a paper copy or $215.00 to receive the release on CD.  *Id.*  Additionally, the FBI advised EPIC that in

---

10.  EPIC appealed to OIP by letter dated November 1, 2012.  *Id.* ¶ 11.  By letter dated December 21, 2012, OIP affirmed FBI's actions regarding the denial for expedited processing. *Id.* ¶ 12.

[2]  The FBI denied plaintiff's request for expedited processing by letter dated October 3, 2012. Hardy Decl. ¶ 18.

order to accelerate the processing of its request, it may wish to consider reducing the scope of the request so that it will fall within one of the smaller queues.  *Id.*[3]

On or about October 17, 2012, EPIC contacted RIDS to discuss narrowing the scope of the request.  *Id.* ¶ 20.  Following a discussion with RIDS, EPIC indicated that it would be submitting a revised request.  *Id.*  By letter dated October 19, 2012, EPIC informed the FBI of its decision to narrow the scope of its request to the following:  "All technical specifications regarding the FBI's development, implementation, and use of technology related to Next Generation Identification ('NGI') in the following states:  Florida, Michigan, Washington, and North Carolina."  Exhibit K to Hardy Decl.  RIDS then placed the records in its backlog for processing based on the re-formulated request.  Hardy Decl. ¶ 23.[4]

EPIC filed this action on April 8, 2013.  ECF Doc. 1.  At that time, while the FBI had conducted its initial searches and gathered the potentially responsive records, the FBI had been unable to complete its processing due to its backlog of prior pending requests and limited resources.  Hardy Decl. ¶¶ 9, 13, 23, 34-37.

By letter dated June 6, 2013, the FBI released 592 pages of material to EPIC in response to its first request for the contract.  *Id.* ¶ 15.  Because the contract had already been made public, no redactions were made and the contract was released in its entirety.  *Id.*  In the letter, the FBI notified EPIC that its fee waiver had been denied because the contract was already in the public

---

[3] The FBI, like other agencies, processes FOIA requests on a first-in, first-out basis.  It uses a three-queue system as a way to fairly assign and process new requests.  Hardy Decl. ¶ 32(a)(II).  The placement of a request in one of the three queues depends on the total amount of material potentially responsive to that request – 500 pages or less ("small queue"), 501 to 2,500 pages ("medium queue") and more than 2,500 pages ("large queue").  *Id.*

[4] In order to ensure that all potentially responsive records had been located, the FBI also conducted another search by contacting the CJIS's RMG.  Hardy Decl. ¶ 26.  The RMG referred the request to NGIPO, which located additional documents.  *Id.*

domain.  *Id.*  However, no fees were involved for the processing of this request because the number of pages fit on one CD which did not require the payment of a fee.  *Id.*

On May 30, 2013, this Court issued an order requiring the parties to file a joint briefing schedule for the filing of dispositive motions on or before June 26, 2013.  ECF Doc. 8.  Pursuant to the order, the parties submitted a Joint Proposed Briefing Schedule.  ECF Doc. 9.  The parties proposed a briefing schedule for cross-motions for summary judgment, with Defendant filing the initial brief on October 15, 2013.  *Id.*  In their proposed schedule, the parties stated that "Defendant will produce all non-exempt responsive material on or before August 30, 2013, with an interim production on or before July 31, 2013."  *Id.*  The Court entered an order endorsing the parties' proposed schedule.  ECF Doc. 10.

By letter dated July 31, 2013, the FBI made its first interim release to EPIC in response to its second request.  Hardy Decl. ¶ 27.  The response consisted of 517 pages with some information redacted pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).  *Id.*  Additionally, the FBI informed EPIC of its decision to grant its request for a fee waiver.  *Id.*  By letter dated August 30, 2013, the FBI made its second and final release to EPIC consisting of 1,406 pages with some information redacted pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).  *Id.* ¶ 28.[5]

After reviewing the pages produced, EPIC's counsel raised a question about one of the documents produced -- NGI Requirements Verification Traceability Index, or RVTM dated October 1, 2010 (NGI-517 and NGI 1342 – NGI 1923).  *Id.* ¶ 29.  Because the cover page (NGI-517) inadvertently had not been processed sequentially with the rest of the document, EPIC thought that only the cover sheet had been produced.  *Id.*  Defendant's counsel explained that the entire document had been produced and the other pages of the document were pages NGI 1342 –

---

[5]  In reviewing the records, the FBI determined that none of the initial 7380 pages located in response to its initial search were responsive.  Hardy Decl. ¶ 26.

NGI 1923.  *Id.*  At the bottom of each of these other pages, there was a footer marked "NGI

DOC -1175.40 May 10, 2007."  *Id.*  Defendant's counsel explained that this footer was a

reference to an earlier version of the technical specifications and that the 2010 version (which

had been produced) is the version of the technical specifications currently in effect and was the

version in effect prior to the deployment of Increment 1 of NGI in February 2011, *i.e.*, the

commencement of NGI operational activity.  *Id.*  In view of the confusion caused by the "footer"

in the document and in an effort to resolve the matter without further litigation, the FBI

voluntarily agreed to process the earlier draft (2007) version, even though it was not responsive

to EPIC's request.  *Id.*  By letter dated November 1, 2013, the FBI made a supplemental release

of this document without redactions to EPIC.  *Id.*  In the letter, the FBI reiterated again that the

2007 version was not responsive to EPIC's request.  Exhibit P to Hardy Decl.

**ARGUMENT**

## I.   LEGAL STANDARDS

The FOIA provides that a "court may assess against the United States reasonable fees and

other litigation costs reasonably incurred in any case . . . in which the complainant has

substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).  This provision requires a court to engage in

a two-step inquiry.  First, the court must determine whether plaintiff is "eligible" for fees.

*Brayton v. Office of U.S. Trade Representative,* 641 F.3d 521, 524 (D.C. Cir. 2011).  To meet

this standard, the plaintiff must show that it has "substantially prevailed," which means it

obtained relief through either (1) "a judicial order, or an enforceable written agreement or

consent decree;" or (2) "a voluntary or unilateral change in position by the agency, if the

complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  The second of these two

options "essentially codifies the 'catalyst theory'" of recovery, under which a plaintiff is eligible

for fees if the "litigation substantially caused the requested records to be released." *N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau,* 563 F. Supp. 2d 217, 221 (D.D.C. 2008) (internal citation omitted).

If a plaintiff can establish eligibility, the court must then determine whether the plaintiff is entitled to fees. *Brayton,* 641 F.3d at 524. To evaluate whether the plaintiff is entitled to an award, the court considers equitable factors including: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of an agency's withholding." *Judicial Watch, Inc. v. FBI,* 522 F.3d 364, 371 (D. C. Cir. 2008) (*quoting Tax Analysts v. Dep't of Justice,* 965 F.2d 1092, 193 (D.C. Cir. 1992). These four factors are "not exhaustive," *Long v. IRS,* 932 F.2d 1309, 1313 (9th Cir. 1991); and "no one factor is dispositive." *Davy v. CIA,* 550 F.3d 1144, 1155 (D.C. Cir. 2008).

Finally, even if plaintiff is eligible and entitled to fees, the court may grant only those fees that are "*reasonable.*" 5 U.S.C. § 552(a)(4)(E). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhard,* 461 U.S. 424, 433 (1983). Moreover, as a decision to award fees is discretionary, a court "may deny in its entirety a request for an 'outrageously unreasonable' amount, lest claimants feel free to make 'unreasonable demands, knowing that the only unfavorable consequence for such misconduct would be a reduction of their fees to what they should have asked for in the first place.'" *Envtl. Def. Fund, Inc. v. Reilly,* 1 F.3d 1254, 1258 (D.C. Cir. 1993) (*quoting Brown v. Stackler,* 612 F.2d 1057, 1059 (7th Cir. 1980)). If overbilling is less egregious but still unreasonable, the Court "may impose a lesser sanction, such as awarding a few below what a 'reasonable' fee

7

would have been in order to discourage fee petitioners from submitting an excessive request."

*Id.* (*citing Farris v. Cox*, 508 F. Supp. 222, 227 (N.D. Cal. 1981)).

## II.     EPIC SHOULD NOT BE DEEMED "ELIGIBLE" FOR ATTORNEYS' FEES AND COSTS.

EPIC predicates its claim that it meets the eligibility requirement solely on 5 U.S.C. §

552(a)(4)(E)(II), which provides that " [a] complainant has substantially prevailed if the

complainant has obtained relief through . . . a judicial order, or other enforceable written

agreement or consent decree."  Pl. Motion at 7.  It claims that the Court's Order adopting the

parties' joint proposed schedule for filing dispositive motions was such an order because it

included a timeline for document production.  *Id.* at 7-8.  As support for its argument, EPIC cites

*Judicial Watch, Inc. v. Dep't of Justice,* 774 F. Supp. 225, 228 (D.D.C. 2011), *appeal dismissed,*

2011 WL 3903437 (D.C. Cir. Aug. 10, 2011), and *Davy v. C.I.A,* 456 F.3d 162, 166 (D.C. Cir.

2006).

The nature of the order in *Davy* is distinguishable from the order in this case.  The order

at issue in *Davy* was not a routine scheduling order.  Davy sought to compel production in

response to three FOIA requests, one of which dated back to 1994.  After the suit was filed, the

parties entered into Joint Stipulation to Set a Schedule for Defendant's Response to Plaintiff's

FOIA Requests.  In response to that stipulation, the district court entered an order requiring the

CIA to provide Davy with the response documents by those dates.  *See* Order dated May 4, 2001

in *Davy v. CIA,* Civ. Action No. 00-2134 (D.D.C. May 4, 2001) (Exhibit 2).  Based on those

facts, the Court of Appeals found that the order was "functionally a settlement agreement

enforced through a consent decree," 456 F.3d at 166.  It held that Davy had obtained relief

because the order "changed the 'legal relationship between [the plaintiff] and the defendant."  *Id.*

at 456 (*quoting Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Res.*, 532 U.S. 598, 604 (2001)).[6]

Unlike Davy, the parties here did not enter into a stipulation which was functionally a settlement agreement. Instead, they simply submitted a Joint Report (ECF Doc. 9) in response to an order requesting the parties to file a joint proposed briefing schedule for dispositive motions (ECF Doc. 8). While the parties' joint report mentioned that "Defendant will produce all non-exempt responsive materials by August 30, 2013," the purpose of the report was to set a deadline for responsive briefing. Moreover, unlike the circumstances in *Davy*, the FBI had already produced records responsive to EPIC's first FOIA request (the request for the contract) prior to the issuance of the scheduling order. Accordingly, the scheduling order issued by this Court pursuant to the Joint Report should not be treated as an order providing EPIC the relief it sought.

Defendant acknowledges that there are non-binding decisions in this district holding that a scheduling order, which includes a deadline for agency to complete its production of non-exempt documents, may be construed as an order for purposes of 5 U.S.C. § 552(a)(4)(E)(II). *See Citizens for Responsibility & Ethics in Wash. V. DOJ,* 820 F. Supp. 2d 39, 47 (D.D.C. 2011) ("*CREW*"); *Judical Watch, Inc. v. FBI,* 774 F. Supp. 2d 225, 229 (D.D.C. 2011). Treating a scheduling order as a consent decree, however, would make a plaintiff eligible for fees in virtually every FOIA case in this district where, as here, the agency had started, but not completed production due to backlogs. As a case management tool, the courts in this district

---

[6] The Court of Appeals decision in *Davy* was prior to the amendment of the FOIA attorney fee provision by the 2007 OPEN Government Act, which incorporated the catalyst theory. Pub. L. No. 110-175, § 4(a), 121 Stat. 2524. Under the prior standard, plaintiffs "would only be eligible for attorney fees if they were 'awarded some relief by [a] court.'" *Brayton,* 641 F.3d at 525. Congress in the Open Government Act sought to "revive[] the possibility of FOIA fees awards in the absence of a court order." *Id.* Given the statutory easing of the eligibility standard, it is not clear that the D.C. Circuit would interpret the standard so broadly as to regard every scheduling order as an appropriate predicate for fees eligibility.

routinely issue standing or scheduling orders at the outset of a case, that require the parties to meet and confer and then submit a joint status or scheduling report.  Congress could not have contemplated that the mere entry of such a housekeeping order automatically would make a plaintiff eligible for attorney fees.  Courts in other districts have held that entry of such a scheduling order is insufficient to establish eligibility under 5 U.S.C. § 552(a)(4)(E)(II).  *See Pohl v. EPA,* No. 09-1480, 2012 WL 762083, *14 (W.D. Pa. March 7, 2012) (finding order directing production of data by a certain date "merely memorialized the representation of Government's counsel during the case management conference"); *Waage v. IRS*, 656 F. Supp. 2d 1235, 1239 (S.D. Cal. 2009) (concluding that the magistrate's order "merely documented the agreement reached between the parties and did not make the Plaintiff the prevailing party").  The Court should reject EPIC's suggestion that a pro-forma scheduling agreement makes it eligible for fees.

## III.   EPIC IS NOT ENTITLED TO ATTORNEYS' FEES AND COSTS.

Should this Court find that EPIC is eligible for attorneys' fees and costs (which it should not), EPIC is still not entitled to such fees based on the facts in this case.  Courts primarily consider four factors in determining whether a plaintiff who is eligible for fees is also entitled to such fees: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the government had a reasonable basis for withholding the requested information."  *Cotton v. Heyman,* 63 F.3d 1115, 1117 (D.C. Cir. 1995).[7]  Based a consideration of the factors, this Court should find that EPIC is not entitled to attorneys' fees.

---

[7] The second and third factors, which are closely related and often analyzed together, typically favor a fee award when the plaintiff is a non-profit organization that disclaims any commercial

**A. The Disclosed Records Did Not Benefit the Public.**

In evaluating the public benefit factor, courts have held that "[t]he simple disclosure of government documents does not satisfy the public interest factor." *Alliance for Responsible CFC Policy v. Costle,* 631 F. Supp. 1469, 1471 (D.D.C. 1986). Instead, the public benefit prong focuses on whether the information received "is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton,* 63 F.3d at 1120. This inquiry should focus on the "specific documents at issue in the case at hand." *Id.*

In this case, EPIC has failed to show that the documents produced in response to the two FOIA requests at issue here benefited the public. Indeed, it cannot. First, the contract sought by its first FOIA request had already been made public. Hardy Decl. ¶ 15. When the information released is already in the public domain, fees should not be awarded. *See Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d at 1094 (affirming lower court's finding that release of publicly available information was "less than overwhelming" benefit to public); *Laughlin v. Comm'r*, 117 F. Supp. 2d 997, 1002 (S.D. Cal. 2000) (finding "no conceivable public purpose" to the release of a "readily accessible" report).

Second, while EPIC posted the records on its website and disseminated the records to approximately 8,000 recipients of its bi-weekly newsletter (Pl. Motion at 9), EPIC has not demonstrated how these records added "the fund of information that citizens may use in making vital political choices." *Cotton,* 63 F.3d at 1120. In its brief, EPIC tries to create the illusion that the records created such a public benefit by asserting that "EPIC's FOIA work in this matter was prominently featured in the *New York Times* as well as several other publications." Pl. Motion. at 9. The news articles cited by EPIC, however, do not support its claim. Indeed, only one of the

---

interest in the records sought. Even if this Court were to find that those factors do not weigh against EPIC, the remaining two factors do not support and an award of attorney fees to EPIC.

articles actually cited to a record produced in this case.  Indeed, most of the articles do not even discuss the NGI Program; instead they discuss general developments in facial recognition technology and other databases using such technology.

For example, the *New York Times* article, dated August 29, 2013, is an opinion article written by Ginger McCall, one of the EPIC attorneys on this case.[8]  Even if one could assume that EPIC could rely on its own opinion article to establish media interest, the article does not focus on the FBI's NGI program, much less mention or discuss any of actual records produced in this case.  Instead, the article begins by asserting that "[l]ast week, thanks in part to documents that I and [EPIC] obtained under the Freedom of Information Act, the American public learned that the Department of Homeland Security is making considerable progress on a computerized tool called the Biometric Optical Surveillance System."[9]  While the short opinion article contains a brief reference to the FBI's NGI Program, the article does not cite to any information gained from the documents produced by the FBI in this case.

Similarly, the November 7, 2013 article on the Center for Investigative Reporting website is an article on a new mobile facial recognition technology purportedly being used by local law enforcement agencies in the San Diego area.[10]  The only reference to the NGI Program made in the article is the statement that "[n]ext year, the FBI will unveil its Next Generation identification system, a nationwide database of biometric information on criminal suspects and convicts that will replace the bureau's current national database of fingerprints, corresponding criminal

---

[8]  http://www.nytimes.com/2013/08/30/opinion/the-face-scan-arrives.html

[9]  *Id.*

[10]  http://cironline.org/reports/facial-recognition-once-battlefield-tool-lands-san-diego-county-5502.

records and notes from past field interviews."[11]  Likewise, the article posted on the CNN website discusses the development of facial recognition technology in general.[12]  While the article contains a brief general reference to the NGI Program, the article primarily discussed the technology being developed by private firms.  The only reference to EPIC is a statement by Amie Stepanovic, the director of its domestic surveillance project, that "Facebook has the largest biometric database in the world."[13]  The article on the Networkworld website discusses a new program known as "Janus" funded by Office of the Director of National Intelligence.[14]  The only mention of the NGI program is that the Electronic Frontier Foundation, an organization completely separate from EPIC, has filed a FOIA request for documents regarding the NGI in the Northern District of California.[15]

The only article which actually mentions any of the records produced in this case is a very short article by J.D. Tuccille, the managing editor of his own online magazine called "Reason 24/7."[16]  He states that "*at the end of the very dry" technical specifications*, the document states that "NGI shall return the correct candidate a minimum of 85% of the time, when it exists in the search repository, as a result of facial recognition search in support of photo

---

[11] *Id.*

[12] *See* http://www.cnn.com/2013/11/25/tech/embracing-big-brother-facial-recognition

[13] *Id.*

[14] http://networkworld.com/community/blog/us-intelligence-wants-radically-advance-facial-recognition-software.

[15] *Id.; see also* http://www.nytimes.com/2013/08/21/us/facial-scanning-is-making-gains-in-surveillance.html?pagewanted=all (article by Charles Savage discussing the Department of Homeland Security's test of a crow-scanning project called Biometric Optical Surveillance System); http://www.economist.com/news/briefing/21589863-it-getting-ever-easier-record-anything-or-everything-you-see-opens (article discussing Google Glass and other private technology); http://www.cio.com/article/744184/Will_This_Robot_Make_America_Safer_ (article discussing a robot developed by a private technology firm).

[16] http://reason.com/blog/2013/10/08/wrong-person-may-be-identified-20-percen

investigation," and "NGI shall return an incorrect candidate a maximum of 20% of the time, as a result of the facial recognition search in support of photo investigation services." (emphasis added).[17]

In EPIC's reach to find some evidence of public benefit, EPIC claims that its work on this case assisted its Spotlight on Surveillance project.  Pl. Motion at 11.  It claims that "[t]hat documents obtained in this case feature prominently in EPIC's most recent Spotlight on Surveillance."  *Id.*  A review of its most recent "Spotlight on Surveillance" does not support this claim.  *See* EPIC: Spotlight on Surveillance – December 2013: the FBI's Next Generation Identification Program.[18]  The only reference to information contained in the records released in this case was in three of the report's twenty-eight paragraphs.  *Id.* (paragraphs 12 and 14 and footnotes 19-21 and 24 discussing the same false-positive statistic cited by Mr. Tuccille in his online article).  The other portions of the report cited to information about the NGI that was already publicly available.  Indeed, if anything, EPIC's report undercuts its claim of public benefit because it demonstrates that there was already a substantial amount of public information on the NGI program.

In short, the circumstances here are not remotely comparable to the facts in cases in which courts have found that the records produced in those cases had been widely discussed in the news media.  For example, in *EPIC v. U.S. Dep't of Homeland Security,* 811 F. Supp. 2d 216 (D.D.C. 2011), EPIC sought records pertaining to whole-body imaging technology used for

---

[17] While the Providence Journal article cited by EPIC also contains a sentence making a vague reference to reports of an alleged 20% error rate, the focus of the article was on the use of facial recognition technology in general, not the NGI Program.  *See* http://www.providencejournal.com/breaking-news/content/20131207-e-wave-hunt-is-on-for-pixel-perfect-criminal-ids.ece.

[18] http://epic.org/privacy/surveillance/spotlight/ngi.htmlhttp://epic.org/privacy/surveillance/spotlight/ngi/.html

screening air travelers.  This Court found that the records disclosed in that case "have provided a public benefit in that they were *covered extensively and cited frequently as a news source* during the public debate surrounding the use of whole body imaging devices in airports."  *Id.* at 234 (emphasis added).  *See also EPIC v. Dep't of Homeland Security,* No. 11-2261, 2013 WL 6047561, *3-*4 (D.D.C. Nov. 15, 2013) (documents obtained were analyzed in the *Washington Post* and other news media and "heavily featured in a congressional hearing").  Here, the only mention of the records are in a very short article on an on-line magazine and EPIC's own report.

Thus, contrary to EPIC's claim, it has not shown that the records at issue here benefitted the public by "add[ing] to the fund of information that citizens may use in making vital political choices."  *Cotton,* 63 F.3d at 1120.

## B.  The FBI Had a Reasonable Basis for its Action.

Under the "reasonable basis" factor, courts consider whether the action taken by the agency had a "reasonable basis" or were instead carried out "merely to avoid embarrassment or to frustrate the requester."  *Church of Scientology v. U.S.P.S.,* 700 F.2d 486, 492 n.6, 494 (9th Cir. 1983).  Because EPIC did not challenge any of the withholdings made by the FBI pursuant to exemptions, EPIC is left to argue that FBI unreasonably delayed the processing of EPIC's requests.  Pl. Motion at 12.  EPIC's argument has no merit.  "[W]hile an agency's failure to meet deadlines," such as the 20 day limit in the FOIA, "is not be condoned, it does not warrant an award of fees in and of itself.  *Simon v. United States,* 587 F. Supp. 1029, 1032 (D.D.C. 1994); *see also Read v. Federal Aviation Admin.*, 252 F. Supp. 2d 1108, 1112 (W.D. Wash. 2003) ("[D]elay due to bureaucratic ineptitude alone is not sufficient to weigh in favor of an award of attorneys' fees.")  Rather, the "reasonable basis" factor "is intended to weed out those cases in which the government was 'recalcitrant in its opposition to a valid claim or otherwise engaged in

obdurate behavior." *United America Financial, Inc. v. Potter*, 770 F. Supp. 2d 252, 257 (D.D.C.

2011); *accord Tax Analysts*, 965 F.2d at 1097; *Simon*, 587 F. Supp. at 1032; *Ellis v. United*

*States*, 941 F. Supp. 1068, 1080 (D. Utah 1996) (concluding that when "the government's delay

in releasing the records rather than its substantive claims of exemption" is challenged, "the

reasonableness factor does not favor a fee award so long as the government did not engage in

obdurate behavior or bad faith.")

        In this case, while FBI was not able to process the request within the 20 working days

prescribed by FOIA, the FBI did not simply ignore the requests.  The FBI moved EPIC's FOIA

requests forward from the very beginning by searching for responsive documents and gathering

them for processing.  RIDS promptly referred the first request to the RMG/CJIS, which referred

it to its NGIPO.  Hardy Decl. ¶¶ 9.  The NGIPO conducted a search for responsive records,

which were then forwarded to RIDS for processing.  *Id.* ¶¶ 9, 13.  With respect to the second

request, RIDS promptly contacted EPIC in attempt to narrow the request to allow for faster

processing.  *Id.* ¶¶ 19-21.  RIDS placed the potentially responsive records that had been gathered

in backlog queue for review.  *Id.* ¶ 23.

        The FBI was not able to complete its review and processing of the documents, however,

due to a backlog of prior FOIA requests and its limited resources.  The FBI received 20,619

FOIA and Privacy Act requests during the Fiscal Year 2012.  Hardy Decl. ¶ 35.  This number

was an 16.13 % increase from the Fiscal Year 2011, when it received 17,755 requests.  *Id.*  The

FBI, like other agencies, processes a request on first-come/first-served basis.  *Id.* ¶ 32(a)(I) and

(II).  As of October 31, 2012, just after receiving EPIC's FOIA requests, the FBI had 4,437

pending FOIA and/or Privacy Act requests.  *Id.*  At that time, there were approximately 2.3

million pages of information that was assigned to RIDS's disclosure units for review.  *Id.*

Among the requests that were pending were 93 large queue requests, each of which involved in excess of 8,000 pages.  *Id.*  Also, during the time period between when FBI received EPIC's requests and when it completed processing of the requests, the FBI had a number of district court cases with court-imposed deadlines for processing and/or reprocessing a large number of documents.  *Id.* ¶ 36; *see, e.g., Kisseloff v. FBI, et al.,* No. 09-CV-391 (D.D.C.) (the FBI was required by a court-approved agreement dated January 20, 2012, to re-process over 300,000 pages at a rate of 2,000 pages per month); *Lardner v. FBI,* Civ. No. 03-cv-874 (D.D.C.) (in response to court order requiring FBI to reprocess approximately 60,000 pages, the FBI processed about 5,000 pages per month between June 2012 and June 2013); *DiBacco and Webster v. Dep't of Justice,* No. 1:02-CV-603 (D.D.C.) (order dated October 10, 2012, ordering the FBI to process 16,705 pages at a rate of 500 pages per month).

Despite this backlog and substantial workload of FOIA requests, the FBI did not receive any increase in funding to process FOIA requests.  Instead, due to mandatory Government-wide sequester cuts and additional budget cuts, the FBI has been forced to cut more than $700 million in expenditures.  *Id.* ¶ 34.  These cuts have necessitated a hiring freeze during which vacant positions will not be filled.  *Id.*  As a result, between September 2012 to October 2013, RIDS lost 14 employees.  *Id.*  In addition, almost 3% of the remaining RIDS employees have been re-located to other offices to cover other vacant positions.  *Id.*  Also, 8000 hours of overtime has been eliminated at RIDS, further impacting the available resources.  *Id.*  In view of the number of its workload and limited resources, the time taken by the FBI to complete its processing of the records was reasonable.

Accordingly, EPIC is not entitled to an award of fees in this case because the disclosure of documents did not provide a public benefit and the delay in processing the documents was reasonable.

## IV.   THE $15,851.50 SOUGHT BY EPIC IS UNREASONABLE.

Even if EPIC were entitled to some fees, the amount of fees sought by EPIC is unreasonable. Here, the only relief that EPIC can possibly contend it achieved is the Court's scheduling order which contained a timeline for production.  Because the FBI met that timeline and EPIC never contested any redactions, EPIC is at most entitled to reasonable fees for the time spent prior to the issuance of the scheduling order, which in this case is the time spent drafting and filing the Complaint.  Moreover, the amount of hours billed by EPIC both for the Complaint and the work performed after issuance of the scheduling order is excessive or otherwise unnecessary.  Finally, the hourly rate sought for three attorneys who have been admitted to the bar less than one year at the time that they performed the work is not supported by this Court's Laffey matrix and should be reduced.

### A.   The Hours Spent for Drafting, Reviewing, Discussing and Filing the Complaint Is Unreasonable and Should Be Significantly Reduced.

In this case, EPIC billed a total of 21.4 hours ($6315.50) for time spent by three attorneys drafting, reviewing, discussing and filing the Complaint: 16 hours by David Brody, 1.3 hours by Ginger McCall, and 4.8 hours by Marc Rotenberg.  *See* ECF Doc. 15-3.[19]  This amount of time is excessive for what should have been a simple complaint describing the FOIA requests and its correspondence with FBI regarding the requests and asserting boilerplate claims regarding failure to respond.  EPIC, however, included 25 paragraphs (*see* ECF Doc. 1, ¶¶ 7-32) of factual

---

[19]  This includes a duplicate charge of 0.8 hours by Mr. Rotenberg for a conference among EPIC attorneys to discuss the complaint on April 4, 2013.

allegations about the underlying NGI Program and facial recognition technology in general.
Such allegations are completely irrelevant and unnecessary.  Under these circumstances, EPIC's
expenditure of time and request for fees for the preparation and filing of its Complaint was
unreasonable.  *See Elec. Frontier Found. v. Office of Dir. Of Nat'l Intelligence*, No. C 07-05278
2008 WL 2331959, at *5 (N.D. Cal. June 4, 2008) (finding "12.0 hours for drafting and
reviewing [a FOIA] complaint" to be "unreasonable").  At most, EPIC should be entitled to 6 to
8 hours for drafting what should have been a simple and straightforward FOIA complaint of the
sort EPIC has filed many times before.

### B.  EPIC Is Not Entitled to Fees for Reviewing Documents and Other Work Performed After Obtaining the Scheduling Order.

EPIC seeks reimbursement of $9,186 for 30.4 hours spent after the Court issued its
scheduling order (at least 16 hours of which relate to EPIC's request for attorney fees).  ECF
13.3 at 1-2.[20]  Even if EPIC were entitled to some reimbursement for a reasonable time spent
drafting and filing the complaint on the theory that it obtained relief based on the Court's entry
of the scheduling order, EPIC is not entitled to reimbursement for its work performed after the
entry of the scheduling order.

The provision in FOIA authorizing an award of attorneys' fees and other litigation costs
is a limited waiver of the federal government's sovereign immunity.  *See Kennedy v. Andrus*, 459
F. Supp. 240, 242 (D.D.C. 1978).  Although "[t]he federal government may waive its sovereign
immunity by statute," such a waiver "'must be unequivocally expressed in statutory text.'"
*Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1025 (D.C. Cir. 2006) (quoting *Lane v.
Peña*, 518 U.S. 187, 192 (1996)).  Moreover, "[c]ourts must strictly construe any waiver of
sovereign immunity, in terms of its scope, in favor of the sovereign."  *Id.* (internal quotation

---

[20]  *See infra* at 25-26 for discussion of EPIC's request for fees for fees.

marks and citations omitted).  Accordingly, "an express waiver is required before attorneys' fees can be assessed against the federal government."  *Kennedy*, 459 F. Supp. at 242; *see also N.Y.C. Apparel F.Z.E.*, 563 F. Supp. 2d at 226-27 (construing the FOIA attorneys' fee provision narrowly because a broader construction would impermissibly go beyond the scope of Congress's explicit waiver of sovereign immunity).

Because, under FOIA, courts only have jurisdiction to "enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld," 5 U.S.C. § 552(a)(4)(B), a party may only obtain fees insofar as such fees relate to an agency's withholding of documents.  *Uhuru v. U.S. Parole Comm'n*, 734 F. Supp. 2d 8, 13 (D.D.C. 2010).  EPIC's claim of eligibility for attorneys' fees here is based on its argument that it obtained documents pursuant to this court's adoption of a joint report.  Pl. Motion at 7. Assuming *arguendo* that EPIC is correct, that does not provide a basis on which EPIC may obtain fees for reviewing the released documents or other matters.  Such work was performed *after* EPIC obtained the scheduling order – and EPIC did not later obtain any additional relief from the Court based on its review of the released documents.  *See, e.g., Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476 (D.C. Cir. 1984) (holding that a party seeking attorneys' fees under FOIA "must show that the prosecution of the action could reasonably be regarded as necessary to obtain the information . . . and that a causal nexus exists between that action and the agency's surrender of the information"); *see also Ajluni v. FBI*, 947 F. Supp. 599, 611 (N.D.N.Y. 1996) (limiting plaintiff's award to "fees incurred up to, and including" the point at which "the last of the . . . documents were released" in a case where the defendant agency was granted summary judgment on its use of exemptions); *Steenland v. CIA*, 555 F. Supp. 907, 911 (W.D.N.Y. 1983) (finding that work performed after records were released, where defendant's asserted exemptions

20

were subsequently upheld, "would assess a penalty against defendants which is clearly unwarranted").

Moreover, the review of released documents is work that EPIC would have performed irrespective of whether it had instituted litigation, and in this manner is indistinguishable from an initial FOIA request or work at the administrative level, tasks for which FOIA does not permit the recovery of attorneys' fees. *See CREW,* 825 F. Supp. 2d at 231. This is especially true here, where EPIC never challenged any of the redactions or received any other court-ordered relief as a result of this review. Indeed, under these circumstances, an award of fees would not constitute reasonable compensation for litigation expenses, but would instead amount to "a sanction for the [defendant's] delay in responding to [a] FOIA request, [and] the FOIA does not recognize such a claim." *Uhuru*, 734 F. Supp. 2d at 14.

In this case, EPIC tries to justify its time spent reviewing the documents by suggesting that it discovered a missing document. Pl. Motion at 5. Contrary to EPIC's assertion, no document was missing. Instead, as explained *supra* at 5-6, the cover page for one of the technical specifications was out of sequential order with the rest of the document. The footer contained in the body of the document referenced a prior 2007 version of the technical specification, which had not been used in the actual deployment of NGI. Hardy Decl. ¶ 29. In view of the confusion caused by the "footer" and in an effort to resolve the matter without further litigation, the FBI voluntarily agreed to process the 2007 version even though it was not responsive. *Id.* Defendant clearly advised EPIC on more than one occasion that this was a good faith gesture and that the 2007 version was not responsive to the EPIC's FOIA request. *See also* Exhibit P to Hardy Decl. (explaining that the 2007 version was not responsive to the request.).

In short, to the extent that EPIC is eligible for or entitled to any fees, it is eligible for fees for the work performed that was necessary to obtain release of the non-exempt documents, and nothing more.

### C. Even If EPIC Were Entitled to Fees for Some Work Performed After the Issuance of the Scheduling Order, the Number of Hours Claimed for Such Work Is Unreasonable and Should be Reduced.

Courts require a plaintiff to exclude from its fee requests, hours that are "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434; *accord Okl. Aerotronics, Inc. v. United States,* 943 F.2d 1344, 1347 (D.C. Cir. 1991). "Similarly, if the same tasks are performed by more than one lawyer, multiple compensation should be denied. The more lawyers representing a side of the litigation the greater the likelihood will be for duplication of services." *Ramos v. Lamn*, 713 F.2d 546, 554 (10th Cir. 1983).

In this case, many of the hours billed by EPIC were unnecessary and unproductive. For example, on December 3, 2013, EPIC billed for 4.5 hours ($1,336.50) for one hour of research, three internal conferences and a telephone call with Defendant's counsel related to what it describes as "FBI's missed deadline." *See* ECF Doc. 15-3 at 8-10. The alleged "missed deadline" refers to EPIC's contention the Defendant's counsel should have proceeded to file a motion for summary judgment within 30 days after the Court's order lifting the stay granted due to the lapse in appropriations, even though EPIC was not contesting the redactions and EPIC's own billing record verifies that, by that time, the parties were in settlement negotiations regarding attorney fees. *Id.* The time spent on this meritless theory was clearly not productive and unnecessary.

Likewise, it is difficult to understand why EPIC should be compensated for the 3.7 hours ($1,166.50) billed by its attorneys on October 7, 2013, in connection with Defendant's motion to

stay the summary judgment briefing schedule due to the lapse in appropriations, especially since the motion granted relief to the Defendant.  ECF Doc. 13-3 at 5-6.[21]  These hours were generated in response to a telephone call made by Defendant's counsel to one of EPIC's attorneys, pursuant to Local Rule 7(m), to determine whether EPIC would oppose Defendant's motion for a stay.  In connection to this simple inquiry, EPIC billed 3.7 hours for time spent on its internal discussions and telephone calls with Defendant's counsel.  ECF Doc. 15-3 at 5-6.[22]  When EPIC finally gave its response (namely, that it opposed the motion), three EPIC attorneys (only one of which has entered his appearance in this case and is admitted to practice in the District of Columbia) participated in the telephone call to Defendant's counsel.  Such a call should have only required one attorney.

The participation of three EPIC attorneys in this telephone call was not an isolated incident and is another example of excessive billing.  In almost every telephone conference with Defendant's counsel, three EPIC attorneys participated, each billing for the telephone conference.  *See* ECF Doc. 15-3 at 3, 5-9.[23]  This triple-billing increased the number of hours

---

[21]  Nor is there any basis for EPIC to seek compensation from Defendant for the 0.6 hours billed for its internal conference on August 27, 2012, discussing the transfer of the case from two EPIC attorneys to two other EPIC attorneys.  *See* ECF Doc. 15-3 at 2-3.  *See Klimbach v. Sperion Corp.,* 467 F. Supp. 2d 323, 333 (W.D.N.Y. 2006) (plaintiff's counsel should not be compensated for time associated with transferring the case from one attorney in its office to another attorney).

[22]  In its billing record, EPIC tries to justify its time by describing its internal conferences as "discussing proposed settlement" and "tele-conference with opposing counsel (M. Sowles) to discuss document EPIC believed to be missing from production." ECF Doc. 15-3 at 5-6.  While EPIC's attorneys did try to broaden its telephone calls with Defendant's counsel to include other matters, Defendant's counsel stressed that the purpose of the call was limited to the motion for a stay.

[23] This is not the first instance of EPIC unabashedly overbilling the government.  In *Electronic Privacy Information Center v. U.S. Dept. of Homeland Security,* No. 10-1992, 2013 WL 5620891 (D.D.C. Oct. 15, 2013), Judge Royce C. Lamberth reduced the hours claimed for two

billed for these calls from 1.2 hours to 3.6 hours.  *Id.*  EPIC also tripled-billed for three attorneys

for its 0.2 hour telephone conference with the Court Clerk on December 11, 2013, to inquire

about lack of a judicial order regarding the parties' joint stipulation setting a briefing schedule

for EPIC's motion for attorney fees.  *Id.* at 9.  Courts "should ordinarily greet a claim that several

lawyers were required to perform a single set of task with healthy skepticism."  *Lipsett v. Blanco,*

975 F.2d 934, 938 (1st Cir. 1992); *cf. Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1987)

(holding where "three attorneys are present at a hearing when one would suffice, compensation

should be denied for excessive time").

     Accordingly, even if EPIC was entitled to fees for some of the time spent after this

Court's entry of the scheduling order, the amount of the hours should be substantially reduced to

eliminate duplicate, unproductive and excessive hours.

### D.  The Hourly Rate Sought By EPIC for Work Done by David Brody, Julie Horwitz and Jeramie Scott Should Be Reduced to $195.

     The hourly rates sought by EPIC for the work done by David Brody, Julie Horwitz and

Jeramie Scott should be reduced from $245 to $195.  Contrary to EPIC's claim, they are not

entitled to $245 under this Court's Laffey matrix based on their experience.  The Laffey matrix

lists the $245 rate for attorneys with 1-3 years of experience.  *See* ECF Doc. 15-9.  Each of these

attorneys had been admitted to practice less than a year experience at the time that they

performed their work at issue.  They all graduated from law school in 2012.  *See* ECF Doc. 15-

10, ECF Doc. 15-13 and ECF Doc. 15-14.  Mr. Brody was admitted to the California State Bar in

January 27, 2013, Ms. Horwitz was admitted to the Maryland Bar on December 12, 2012; and

conferences for which EPIC had billed for eight attorneys.  *Id.* at *4.  He stressed that "the Court
will pay particular close attention when many lawyers bill for a single task."  *Id.* at *2.

Mr. Scott was admitted to the New York in May 2013.  *See* Exhibits 3-5.[24]  As this Court has

recognized, its Laffey matrix contains "no category for an attorney who has been admitted to

practice law but who has less than a full year of legal experience."  *EPIC v. Dep't of Homeland

Security*, 2013 WL 6047561, at *6.  Because there is no category for attorneys with less than one

year of experience, Judge Bates found that attorneys with less than one year experience should

be compensated at an hourly rate of $195, splitting the difference between the $145 hourly rate

for paralegal and law clerks and the $245 hourly rate for attorneys with 1 to 3 years of

experience. *Id.*  Therefore, to the extent that this Court finds that EPIC is entitled to

compensation for the time spent by Mr. Brody, Ms. Horwitz and Mr. Scott, the hourly rate used

to calculate the fees should be reduced to $195.

### E.   EPIC's Recovery of Fees on Fees, if any, Should Be Adjusted Downward to the Extent Its Fees Petition Is Unsuccessful.

Finally, because most (if not all) of EPIC's fees demands are unwarranted or

unsupported, the amount of "fees on fees" EPIC recovers, if any, should be reduced accordingly.

*See Comm'r, I.N.S. v. Jean,* 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation should be

excluded to the extent that the applicant ultimately fails to prevail in such litigation."); *National

Veterans Legal Servs. Program v. U.S. Dep't of Veterans Affairs,* No. 96-CV-01740, 1999 WL

33740260, at *5-*6 (D.D.C. Apr. 13, 1999).  EPIC to date seeks approximately $ 4,310.00 in

---

[24]  Because none of these three attorneys are admitted to practice in the District of Columbia, it is questionable whether they are even entitled to attorney rates.  *See Dickens v. Friendship-Edison P.C.S.,*724 F. Supp. 2d 113, 119-20 (D.D.C. 2010) ("Though they are admitted to the bars of other states, neither RR nor CB were licensed to practice in the District of Columbia during the time they worked on these cases. . . . Accordingly, this Court accepts Defendant's suggestion that attorneys RR and CB are reasonably billed at the hourly rate for paralegals.")(IDEA case).  *See also  Baker v. D.C. Public Schools,* 815 F. Supp. 2d 102, 116 (D.D.C. 2011) ("Attorneys who are not admitted to the D.C. Bar are not entitled to reimbursement at attorney rates. . .") (IDEA case); *but see EPIC v. Dep't of Homeland Security,* No. 2261, 2013 WL 6047561, at *6 (D.D.C. Nov. 15, 2013).

connection with its fee petition. Accordingly, if EPIC receives an award of "fees on fees" at all, that amount should be substantially reduced to reflect any reduction in the award of fees on the merits.  Defendant, moreover, urges the Court to consider as an appropriate measure the metric adopted by Judge Hogan in *LaShawn A. v. Barry,* 1998 WL 35243112 (D.D.C. Feb. 18, 1998), which capped plaintiff's recovery for "fees on fees" at 15 percent of any recovery for litigation of the merits of the case.  *Id.* at *6 (citing *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986).

## CONCLUSION

For the foregoing reasons, EPIC's motion for attorney fees should be denied because EPIC is neither eligible nor entitled to attorney fees under 5 U.S.C. § 552(a)(4)(E).  However, to the extent that this Court finds that EPIC is entitled to fees and costs, it should receive no more than a total of $2,025.00 -- $1,675.00 for 8 hours drafting and filing the complaint and $350 for the filing fee.  The attorney fees are based on an allocation of 6 hours to David Brody at $195 per hour and 1 hour to Marc Rotenberg at $505 per hour.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

s/Marcia K. Sowles
MARCIA K. SOWLES
DC Bar No. 369455
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7114
Washington, D.C.  20530
Tel.: (202) 514- 4960
Fax: (202) 616- 8470

26

E-mail:  marcia.sowles@usdoj.gov

Attorneys for Defendant