IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-CV-442-RBW |
| FEDERAL BUREAU OF INVESTIGATION | ) ) ) | |
| Defendant. | ) ) | |

# **Exhibit 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER )<br><br>Plaintiff, )<br><br>v. )<br><br>FEDERAL BUREAU OF INVESTIGATION )<br><br>Defendant. )<br> ) | Civil Action No.: 13-cv-442-RBW |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)      I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)      In my official capacity as Section Chief of RIDS, I supervise approximately 261 employees who staff a total of ten (10) FBIHQ units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to

1

requests for access to Federal Bureau of Investigation ("FBI") records and information pursuant

to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of

2009; the Privacy Act of 1974; Executive Order ("E.O.") 13526, Presidential, Attorney General,

and FBI policies and procedures; judicial decisions; and Presidential and Congressional

directives.

      (3)    Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. ' 552, and the Privacy Act of 1974, 5 U.S.C. ' 552a. Specifically, I am

aware of the treatment which has been afforded EPIC's September 20, 2012 and September 21,

2012 FOIA requests for information regarding:

a.     All contracts between the FBI and Lockheed Martin, IBM, Accenture, BAE Systems
        Information Technology, Global Science & Technology (GST), Innovative Management
        & Technology Services (IMTS), Platinum Solutions, the National Center for State Courts
        (NCSC), or other entities concerning the Next Generation Identification system ("NGI").

b.     All technical specifications regarding the FBI's development, implementation, and use of
        technology related to Next Generation Identification (NGI).

      (4)    The FBI submits this declaration to provide the Court with an explanation of the

FBI's record-keeping system and the procedures used to search, review, and process records

responsive to EPIC's FOIA requests that served as the basis for this lawsuit. The FBI intends to

show that it moved forward from the very beginning to search, review, and process records

responsive to EPIC's FOIA requests, and did not intentionally delay any release of non-exempt

information. In fact, the FBI worked closely with EPIC to narrow the scope of the requests to

allow for quicker processing and even provided additional material to EPIC that the FBI found to

be non-responsive to EPIC's FOIA requests to allay their concerns. In addition, of the 2,515

responsive pages located and processed for EPIC's FOIA requests, no pages were withheld in full, only 16 pages contained redactions pursuant to applicable FOIA exemptions, and the remaining balance of 2,499 pages were released in full because those pages contained information already in the public domain.[1]

## NEXT GENERATION IDENTIFICATION SYSTEM

(5)    As way of background, the FBI has initiated the Next Generation Identification ("NGI") Program based, in part, by advances in technology and growing demand for Integrated Automated Fingerprint Identification ("IAFIS") services.  This program will advance the FBI's biometric identification services, providing an eventual replacement of current IAFIS capabilities.  NGI improvements and new capabilities will be introduced across a multi-year time frame within a phased approach.  A full and open competition was used to award the NGI contract to Lockheed Martin Transportation and Security Solutions.  The mission of the NGI Program Office ("NGIPO"), which administers the NGI program, is to reduce terrorist and criminal activity by improving and expanding biometric identification and criminal history information services.

## PROCEDURAL HISTORY OF PLAINTIFF'S FOIA REQUESTS

(6)    Set forth below is a chronology and description of the correspondence concerning EPIC's FOIA requests submitted to the FBI.  Copies of this correspondence are attached hereto as **Exhibits A-P.**

### FOIPA Request Number 1199133

---

[1]  Names and/or identifying information of FBI support personnel were properly withheld pursuant to Exemptions (b)(6) and (b)(7)(C).  In addition, secure FBI e-mail address, IP Addresses and computer Port Numbers were properly withheld pursuant to Exemption (b)(7)(E).  EPIC is not contesting these exemption assertions.

(7)     EPIC submitted a FOIA request to FBIHQ via facsimile on September 20, 2012,

for information regarding "all contracts between the FBI and Lockheed Martin, IBM, Accenture,

BAE Systems Information Technology, Global Science & Technology (GST), Innovative

Management & Technology Services (IMTS), Platinum Solutions, the National Center for State

Courts (NCSC), or other entities concerning the Next Generation Identification system (NGI)."

EPIC requested expedited processing and a fee waiver. (*See* **Exhibit A**)

(8)     The FBI acknowledged receipt of this request and assigned it FOIA Request

Number **1199133** by letter dated September 26, 2012. Also, the FBI informed EPIC that their

requests for expedited processing and a fee waiver were being considered and that they would be

advised of the decision at a later date. (*See* **Exhibit B**).

(9)     On September 26, 2012, within days of receiving the request, RIDS directed the

request to the FBI's Criminal Justice Information Service Division ("CJIS"), Records

Management Group ("RMG"). RMG then reached out to the NGIPO for location of the records

and guidance as to how the records should be processed. Following consultation with RMG, in

early January, the NGIPO began the process of delivering a portion of the responsive documents

to RIDS for review.

(10)    Meanwhile, the FBI denied EPIC's request for expedited processing by letter

dated October 3, 2012. In its letter, the FBI advised EPIC that they could file an appeal by

writing to the Director, Office of Information Policy ("OIP") within 60 days from the date of the

letter. (*See* **Exhibit C**).

(11)    EPIC appealed to OIP by letter dated November 1, 2012. Specifically, EPIC

appealed the FBI's failure to respond within twenty days after the receipt of the request and the

4

FBI's denial for expedited processing. (*See* **Exhibit D**).

(12)    By letter dated December 21, 2012, OIP affirmed FBI's actions regarding the denial for expedited processing. In regards to EPIC's appeal of the FBI's lack of response within 20 days, OIP informed EPIC that since no adverse determination had yet been made, there were no actions to be considered by their office. Finally, OIP advised EPIC of the FOIA provision which authorizes requesters to file a lawsuit when an agency takes longer than the statutory time period to respond to FOIA requests. OIP assigned appeal number 13-00864 to this appeal. (*See* **Exhibit E**).

(13)    In January 2013, RIDS, after determining that all of the responsive pages had been located and delivered to RIDS by the NGIPO, placed the request in the backlog of pending FOIA requests. Additional items were located and added to the pending request in March 2013. The responsive records were enough to place EPIC's request in the medium processing queue, and several other requests were ahead of EPIC's request.[2]

(14)    On April 8, 2013, EPIC filed civil action number 13-442 in the United States District Court for the District of Columbia.

(15)    In May 2013, RIDS began the processing of the responsive documents in coordination with NGIPO and subsequently determined that since the contract had been made public at one point, no redactions were necessary. By letter dated June 6, 2013, the FBI released 592 pages of material to EPIC in its entirety with no redactions. This letter notified EPIC that their fee waiver had been considered with the principal question as to whether release of the information would benefit the general public. The FBI denied the fee waiver since the material was already in the public domain. However, no fees were involved for the processing of this

---

[2]  *See* ¶ 32(a)(I) and (II), for explanation of FBI's three-queue system.

request because the number of pages fit on one CD which did not require the payment of a fee. (*See* **Exhibit F**).

**FOIPA Request Number 1199125**

(16)     EPIC submitted a FOIA request to FBIHQ via facsimile on September 21, 2012, for information regarding "all technical specifications regarding the FBI's development, implementation, and use of technology related to Next Generation Identification ("NGI")." Plaintiff requested expedited processing and a fee waiver. (*See* **Exhibit G**).

(17)     The FBI acknowledged receipt of this request and assigned it FOIA Request Number **1199125** by letter dated September 26, 2012. Also, the FBI informed EPIC that their request for expedited processing and fee waiver were being considered and that they would be advised of the decision at a later date. (*See* **Exhibit H**).

(18)     The FBI denied EPIC's request for expedited processing by letter dated October 3, 2012. In its letter, the FBI advised EPIC that they could file an appeal by writing to the Director, OIP within 60 days from the date of the letter. (*See* **Exhibit I**).

(19)     By letter dated October 5, 2012, the FBI notified EPIC that it had "located approximately 7,380 pages which are potentially responsive to the FOIA [request]".[3] The FBI further advised EPIC that pursuant to U.S. Department of Justice ("DOJ") regulations, 28 C.F.R. § 16.11, duplication fees applied to this request and that EPIC would owe $728.00 to receive a paper copy or $215.00 to receive the release on CD. Additionally, the FBI advised EPIC that in order to accelerate the processing of their request, they may wish to consider reducing the scope of the request so that it would fall within one of the smaller queues. Finally, the FBI notified

---

[3]  It was determined upon further review of these 7,380 pages that they were non-responsive to this specific request. *See* ¶ 26 for a full explanation.

EPIC of their requirement to respond to the FBI writing within 30 days from the date of the letter as to the format decision (paper or CD) and their commitment to pay the estimated fees or the FBI would otherwise close the request.  (*See* **Exhibit J**).

(20)     On or about October 17, 2012, EPIC contacted RIDS to discuss narrowing the scope of the request.  The purpose was to have the request fall within a smaller queue which would allow faster processing time.  Following a discussion with RIDS, EPIC indicated that they would be submitting a revised request.

(21)     By letter dated October 19, 2012, EPIC informed the FBI of their decision to narrow the scope of their request to the following:

>     a.     All technical specifications regarding the FBI's development, implementation, and use of technology related to Next Generation Identification ("NGI") in the following states:  Florida, Michigan, Washington, and North Carolina.

(*See* **Exhibit K.**)

(22)     EPIC appealed the FBI's denial of expedited processing to OIP by letter dated November 9, 2012.  In its appeal letter, EPIC renewed their request for a fee waiver.  (*See* **Exhibit L**).

(23)     On October 19, 2012, RIDS placed the request in the backlog to wait processing based on the re-formulated request.

(24)     By letter dated December 6, 2012, OIP affirmed FBI's actions pertaining to the expedited treatment.  Regarding EPIC's request for a fee waiver, OIP informed EPIC that since the FBI had not issued any adverse determination, nor any fees were assessed at the time, their request was premature.  OIP assigned appeal number 12-00813 to this appeal.  (*See* **Exhibit M**).

(25)     On April 8, 2013, EPIC filed civil action number 13-442 in the United States

7

District Court for the District of Columbia.

(26)     To insure that all potentially responsive records had been located, on or about
May 14, 2013, the conducted a further search for potentially responsive records by contacting
CJIS's RMG. RMG then reached out to the office most likely to maintain potentially responsive
records, which once again was NGIPO. As a result, the NGIPO located 1,923 pages of
potentially responsive material and forwarded it to RMD/RIDS for further review and
processing. Additionally, RIDS/RMD circulated an Electronic Communication ("EC") to the
NGI Program Office on or about May 29, 2013. The EC requested NGI personnel to conduct a
thorough search for any potentially responsive documents in their possession, in response to
EPIC's FOIA request.[4] No additional records were located as a result of the EC. A further
review on or about June 1, 2013 of all potentially responsive documents on hand subsequently
determined that the 7,380 pages, previously obtained on or about October 5, 2012, were not
responsive to EPIC's request. The remaining 1,923 pages of responsive material were processed
for release.

(27)     By letter dated July 31, 2013, the FBI made its first interim release to EPIC
consisting of 517 pages. No pages were withheld in full. Redactions were made on 14 pages
pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(E). Additionally, the FBI informed
EPIC of its decision to grant their request for a fee waiver. (*See* **Exhibit N**).

(28)     By letter dated August 30, 2013, the FBI made its second and final release to
EPIC consisting of 1,406 pages. No pages were withheld in full. Redactions were made to only
2 pages pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). (*See* **Exhibit O**).

---

[4] A copy of EPIC's FOIA request was incorporated into the text of the search EC to insure accuracy of
the search.

(29)    After reviewing the pages produced, EPIC's counsel raised a question about one

of the documents produced -- NGI Requirements Verification Traceability Index, or RVTM

dated October 1, 2010 (NGI-517 and NGI 1342 – NGI 1923).  Because the cover page (NGI-

517) had been inadvertently not processed sequentially with the rest of the document, plaintiff's

counsel thought that only the cover sheet had been produced.  Defendant's counsel explained the

entire document had been produced and the other pages of the document were pages NGI 1342 –

NGI 1923.  At the bottom of each of these other pages, there was a footer marked "NGI DOC -

1175.40 May 10, 2007".  Defendant's counsel explained that the footer in the bottom of these

pages was reference to an earlier version of the technical specifications and that the RVTM dated

October 1, 2010, were technical specifications regarding the FBI's development,

implementation, and use of technology related to Next Generation Identification . . . in the

following states:  Florida, Michigan, Washington, and North Carolina, as requested by plaintiff,

as well as all other jurisdictions.  The RVTM dated October 2010 are those specifications not

only currently in effect, but also in effect prior to the deployment of Increment 1 of NGI

(February 2011), *i.e.*, the commencement of NGI operational activity.  In view of the confusion

caused by the "footer" in the document and in an effort to resolve the matter without further

litigation, the FBI voluntarily agreed to process the earlier draft (2007) version of RVTM, which

the FBI considers non-responsive to the request.  By letter dated November 1, 2013, the FBI

made a supplemental release of this document without redactions to EPIC consisting of 539

pages released in full.  (*See* **Exhibit P**).

## HOW A FOIA REQUEST IS PROCESSED IN RIDS

(30)    Prior to FY 2012 RIDS handled on average over 17,000 FOIA and Privacy Act

requests annually, and had an average of 117 FOIA cases in litigation nationwide on any given day.  At the end of Fiscal Year ("FY") 2012, the FBI determined that the intake of FOIA and Privacy Act requests were 20,619 requests.  EPIC's requests, which were submitted in September 2012, fell within the intake of requests in FY 2012.

(31)     A FOIA/Privacy Act request to the FBI passes through a series of separate, discreet phases in RIDS: (1) initially receiving and perfecting the request; (2) searching for and collecting potentially responsive material; (3) scoping the material for responsiveness; (4) classification or declassification review if needed; and (5) processing responsive material for release.  These steps must be taken sequentially, as access to the information must be controlled to ensure integrity.  While the storage and movement of material at each of these steps is facilitated by the FBI's electronic FOIPA Data Processing System ("FDPS"), the vast bulk of the work on a FOIA/Privacy Act request, whether at the administrative state or in litigation, still requires action by an individual analyst who must conduct a page-by-page, line-by-line, word-by word review in order to determine whether the material ultimately can be released.  In addition, the analyst must coordinate review of the material when necessary with the component most familiar with the records.

( 32)     RIDS currently employs 261 personnel, most of whom are Legal Administrative Specialists ("LASs"), who are assigned among ten (10) units within RIDS in Winchester, Virginia, and two (2) operational service centers located in Savannah, Georgia, and Butte, Montana, respectively, and are further subdivided into the following units: one (1) Work Process Unit ("WPU"), three (3) Classification Units ("CU"), five (5) FOIPA Disclosure Units, and one (1) Litigation Support Unit ("LSU").  A brief functional description of each of these units

10

follows.

        (a)     Work Process Unit

              (I)     The Work Process Unit ("WPU") is responsible for reviewing and sorting all correspondence/incoming requests for information from the public, Congress, Presidential Libraries, foreign governments, other federal and state agencies, and other FBI entities (i.e., FBI field offices, Legats). WPU handles various initial tasks required to "perfect" a FOIA/Privacy Act request, including sending letters to acknowledge requests, advising a requester to provide identifying data so that an accurate records search can be made and/or to submit a notarized signature/Privacy Act waiver, and advising a requester when no responsive records are located. WPU opens new requests, assigns a FOIA/Privacy Act ("FOIPA") Request Number, and enters the perfected requests into the FBI's electronic FOIA/Privacy Act Document Processing System ("FDPS") tracking system. WPU conducts searches of the general indices for identifiable records,[5] confirms responsive documents, stamps files for retention, addresses fee issues (other than fee waiver reviews), retrieves and forwards files for scanning into FDPS, responds to status inquiries from requesters that do not have access to the FBI's website,[6] and maintains requests prior to their transfer to the FOIPA Disclosure Units. WPU is also responsible for preparing "perfected" requests for transfer to the five FOIPA Disclosure Units. A request is considered "perfected" when all administrative tasks have been completed and all

---

[5] At times, when a standard search of the general indices does not produce anticipated results, WPU drafts an electronic communication called a "search EC" and directs it to those divisions most likely to house potentially responsive material. The search EC then requires a specific point of contact from those divisions to respond to WPU within a specific time period, usually 30 days, and provide WPU with copies of any potentially responsive documents they have located within their division. Searches that involve this level of coordination with other divisions are far more complex than the searches conducted on the average request and therefore often require additional time.

[6] The FBI's acknowledgment letter to EPIC informs it to check the status of their FOIA request at www.fbi.gov/foia.

responsive documents have been collected and scanned into FDPS.  Once a request has been

perfected, it is placed in backlog for assignment to a FOIPA Disclosure Unit for processing.

   (II)  Once WPU perfects a request it is sent to the "perfected backlog."

To ensure fairness to all requesters and to equitably administer the deluge of FOIA/Privacy Act

requests received by the FBI, a request is assigned based on the date of receipt on a "first-in,

first-out" basis from within each of three queues according to sound administrative practices.[7]

The FBI uses a three-queue system as a way to fairly assign and process new requests.[8]  The

three-queue system established "multi-track" processing for requests, based on the amount of

time and work involved in handling a particular request.[9]  The system nevertheless preserves the

principle that, within the three queues, requests are still assigned and processed on a first-in/first-

out basis.  The placement of a request in one of the three queues depends on the total amount of

material responsive to that request - 500 pages or less ("small queue"), 501 to 2,500 pages

("medium queue"), or more than 2,500 pages ("large queue").  This standard operating

procedure, coupled with the FBI's "first-in, first-out" policy, permits requests to be addressed in

the order in which they are received, while obviating the inequities to other requesters whose

interests relate only to a small number of documents.

   (b)  Classification Units:  The three Classification Units ("CUs") are responsible

for complying with the classification/declassification review of FBI records under Executive

Order 13526 and for conducting mandatory declassification review consistent with Executive

Order 13526.  The CUs review documents responsive to FOIA/Privacy Act requests, criminal

---

[7]  See 28 C.F.R. § 16.5(a).
[8]  This system went into effect on July 10, 1997, superseding the previous system of two queues (one for 100 pages or less, the other for requests greater than 100 pages).
[9]  See 5 U.S.C. § 552(a)(6)(D)(I) and 28 C.F.R. § 16.5(b).

and civil discovery requests, Congressional and Presidential mandates, Presidential Library

requests, mandatory declassification requests, Office of Inspector General Reports, and other

federal agency requests in order to determine whether such material should remain classified or

be declassified.  In addition, the CUs review and prepare classified material for review by the

Department of Justice Review Committee ("DRC").[10]

(c)   FOIPA Disclosure Units:  There are five FOIPA Units in RIDS - three of

these have also recently assumed responsibility for performing the same tasks performed by

WPU in addition to the processing tasks described below.  This change has enabled RIDS to

increase efficiency by reducing the time it takes to accomplish WPU functions upon receiving a

request.  FOIPA Disclosure Units perform the actual processing of records pursuant to the

provisions of the FOIA and Privacy Act.  "Processing" involves a word by word, page-by-page

review of responsive documents to determine which, if any, FOIA and/or Privacy Act

exemptions may apply.  This includes redaction of the exempt material and notation of the

applicable exemption(s) in the margin of each page and/or preparation of deleted page

information sheets when pages are withheld in their entirety, all done electronically in FDPS.

During the course of review, the FOIPA Disclosure Units consult with FBI divisions, consult

with other government agencies, as necessary, for their respective determinations as to the

releasability of the other agency's information contained within FBI records, or refer non-FBI

documents to those originating agencies for processing and direct response to the requester.  The

FOIPA Disclosure Units ensure that FOIA and/or Privacy Act exemptions have been applied

properly, no releasable material has been withheld, no material meriting protection has been

---

[10]  The DRC is the FBI's appellate authority with regard to the implementation and administration of
Executive Order 13526 and related directives and guidelines concerning classified information.  See 28
C.F.R. § 17.14.

released, all necessary classification reviews have been completed by transferring applicable cases to the CUs, and other government agency information and/or entire documents originating with other government agencies have been properly handled.

        (d)   <u>Litigation Support Unit</u>: The Litigation Support Unit ("LSU") is responsible for providing legal support and administrative assistance to the FBI's Office of the General Counsel in all FOIA requests that result in federal litigation. LSU coordinates the progress of the FBI's response to a particular FOIA/Privacy Act request as it progresses through the units described above, the receipt of substantive litigation-related information from involved FBI Special Agents in the field offices and operational Divisions at FBIHQ, and the referral of documents to other DOJ components and/or government agencies. LSU prepares the administrative record, drafts both procedural and substantive declarations, codes and Bates stamps documents processed by the FOIPA Disclosure Units,[11] and drafts detailed declarations justifying the assertion of all applicable FOIA/Privacy Act exemptions.

        (33)   In order to promote administrative efficiency in light of the tremendous number of requests the FBI received, RIDS LASs understandably must work on more than one request at a time. Certain cases may require that the usual processing be halted midstream. This can occur for a variety of reasons, including the resolution of classification issues, the location of additional records, or consultation with individual units most familiar with the material.

---

[11] A coded format is used in cases to assist the Court and parties in reviewing information which the FBI withholds within the context of processed documents. Each instance of information withheld pursuant to the FOIA is accompanied by a coded designation that corresponds to specified categories. For example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to Exemption (b)(7)(C) of the FOIA, which concerns "Unwarranted Invasion of Privacy." The numerical designation "-1" following the "(b)(7)(C)" narrows the main category to the more specific subcategory of "Names and/or Identifying Data of Third Parties Merely Mentioned." Although adding codes is a time-consuming process, it helps the Court and the parties in those jurisdictions that accept coded declarations to explain more clearly the nature of the withheld material.

## STAFFING SHORTAGES AFFECTED THE PROCESSING OF PLAINTIFF'S REQUESTS

(34)    There are finite resources available to RIDS to process the large number of FOIA and Privacy Act requests, particularly in the current budget climate. Due to mandatory, Government-wide sequester cuts and additional cuts resulting from the most recent continuing resolution, the FBI has been forced to cut $700 million in expenditures. These cuts have necessitated a hiring freeze during which vacant positions will not be filled. Due to the hiring freeze and sequester cuts, RIDS employment numbers from September 2012 to October 2013 did not increase but were reduced by 14 employees. Additionally, funding for other operations is being significantly curtailed to the extent possible without endangering critical operations and the safety and national security of the country. As a result of the hiring freeze, almost 3% of RIDS remaining employees have been re-located to other offices to cover vacant positions. (Seven employees were affected, resulting in a loss of up to 7000 processed pages per month.) Also, 8000 hours of overtime has been eliminated at RIDS, further impacting the resources available to RIDS for processing FOIA and Privacy Act requests.

## OTHER FACTORS AFFECTING THE PROCESSING OF PLAINTIFF'S REQUESTS

(35)    Although the RIDS staffing has decreased each year, the number of requests received by the FBI has significantly risen. For example, the FBI received an average of 911 requests per month in FY 2005. In FY 2011, the FBI received a total of 17,755 FOIA and Privacy Act requests, or an average of 1,480 requests per month. For FY 2012, the FBI received 20,619 FOIA and Privacy Act requests, or an average of 1,718 requests per month. As of October 31, 2012, just after receiving EPIC's FOIA requests, there were 4,437 pending requests.

15

There were approximately 2.3 million pages of information assigned to the five FOIPA

Disclosure Units for review.  Among the pending requests  for processing were 93 extra large-

queue requests, each of which involved in excess of 8,000 pages of potentially responsive

records.

        (36)    In addition to the workload demands on its finite resources described above, the

FBI's ability to complete the processing of material responsive to EPIC's requests was directly

affected by competing litigation resource requirements.  The aggregate volume of work in RIDS

directly impacts the availability and allocation of resources to requests in litigation.  With finite

resources and an extremely high FOIA workload, RIDS constantly strives to adhere to and

comply with the FOIA's statutory and regulatory requirements for responsiveness and processing

times, to the maximum extent possible.  This requires a careful balancing of resources and

priorities among both litigation and administrative requests as the same RIDS personnel who are

working to comply with numerous litigation deadlines, such as those discussed below,

simultaneously handle a constantly high volume of administrative requests, referrals, and

appeals.  The FBI had a total of 144 pending FOIA lawsuits nationwide during the time period of

when EPIC's FOIA requests were received and when processing was completed.  A number of

these cases – including EPIC's case – involved large volumes of records, and required RIDS to

devote significant resources in order to comply with federal district court Orders or agreed-upon

court-entered deadlines.  Examples of some of these cases include, but are not limited to:

        (a)    *Lardner v. FBI, et al.* Civ. A. No. 03-CV-0874 (D.D.C.) – by court order,

60,000 pages were required to be re-processed and per agreement of the parties the schedule

required 5,000 pages processed per month to be completed by June 2013;[12]

      (b)    *Kisseloff v. FBI, et al.*, Civ. A. No. 09-CV-391 (D.D.C.) – at least 2,000

pages per month must be re-processed until all pages (which exceed 300,000 pages) are

completed, per court-approved agreement of the parties;[13]

      (c)    *Garrett M. Graff v. FBI, et al.*, Civ. A. No. 09-CV-2047 (D.D.C.) – 6,000

pages must be processed by May 2013, per court order April 11, 2012;

      (d)    *Corey Davis v. DHS, et al.*, Civ. A. No. 11-CV-203 (E.D.N.Y.) – the FBI

on or about January 6, 2012, agreed to process 500 pages per month until the remaining 12,500

pages and 16 DVDs are completed;

      (e)    *Ogelsby v. DOJ*, Civ. A. No. 02-CV-603 (D.D.C.) – the FBI, per  court

order October 10, 2012, is required to review at least 500 pages per month until the full 16,705

pages have been reviewed, and to submit monthly status reports;

      (f)    *EPIC v. FBI*, Civ. A. No. 12-CV-667 (D.D.C.) – the FBI, per court order

dated March 28, 2013, is required to review and process 5,000 pages per month of the

approximately 25,000 potentially responsive records by August 1, 2013.  Seven (7) FOIPA

Disclosure Legal Administrative Specialists were assigned full-time to work on this case alone;

and

      (g)    *Darui v. DOJ*, Civ. A. No. 11-CV-01371 (D.D.C) – per agreement dated

on or about February 1, 2012, the FBI agreed to process 500 pages per month until the remaining

---

[12]  The records in this case, which are quite old, were being re-processed and as a result, RIDS was able to process more pages per month than RIDS would be able to if we were to be processing these records for the first time.

[13]  The records in this case, which are quite old, are being re-processed by order of the Court and as a result, RIDS is able to process more pages per month than RIDS would be able to if we were to be processing these records for the first time.

5,500 pages are completed. This processing was completed on May 23, 2013. In addition, on April 4, 2013, Executive Office of the United States Attorney (EOUSA) referred for direct response to plaintiff 37,859 pages of potentially responsive material. Two (2) Legal Administrative Specialists were assigned to conduct this review. After a page by page review of these documents over several months it was determined that only 2,854 pages were specific to plaintiff's request. Parties agreed on August 15, 2013 that these pages will be processed for release by January 2014.

## CONCLUSION

(37)    After conducting a reasonably adequate search, the FBI has processed and released all segregable information from the records responsive to EPIC's requests. Information has been properly withheld pursuant to FOIA Exemptions 6, 7(C) and 7(E), 5 U.S.C. ' ' 552 (b)(6), (b)(7)(C) and (b)(7)(E) on only 16 pages of the 2,515 pages processed for the EPIC's requests. In fact, 2,499 pages were released in full. The FBI moved the EPIC's FOIA requests forward from the very beginning searching, reviewing, and processing records responsive to EPIC's FOIA requests, and did not intentionally delay any release of non-exempt information. In fact, the FBI worked closely with EPIC to narrow the scope of the requests and even provided additional material to EPIC that the FBI found to be non-responsive to the EPIC's FOIA requests.

Pursuant to 28 U.S.C. ' 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through P attached hereto are true and correct copies.

Executed this 10th day of January, 2014.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

19