**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|                                    |     |                          |
|------------------------------------|-----|--------------------------|
| ELECTRONIC PRIVACY                 | )   |                          |
| INFORMATION CENTER                 | )   |                          |
|                                    | )   |                          |
|    Plaintiff,       | )   |                          |
|    v.               | )   | No. 1:13-cv-00442-RBW    |
|                                    | )   |                          |
| FEDERAL BUREAU OF                  | )   |                          |
| INVESTIGATION                      | )   |                          |
|                                    | )   |                          |
|    Defendant.       | )   |                          |

_____

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff Electronic Privacy Information Center ("EPIC") moved the Court for an award of attorneys' fees and costs of $15,851 against Defendant Federal Bureau of Investigation ("FBI") in this Freedom of Information Act ("FOIA") action following the release of 2,500 pages of documents that resulted from this litigation concerning a matter of substantial public interest. Dkt. No. 15. The FBI filed a memorandum in opposition stating that the Court should either deny EPIC fees or provide at most $2,025. Dkt. No. 16 ("FBI Opp."). EPIC now replies in support of its motion for attorneys' fees and costs. For the reasons stated below, EPIC's motion should be granted. Furthermore, EPIC asks the Court to award EPIC an additional $6,272.50 in attorneys' fees incurred in the preparation of this reply, Exhibit 1, and all other filings subsequent to the filing of the FBI's Memorandum in Opposition.

## INTRODUCTION

EPIC is both eligible and entitled to attorneys' fees and costs. Contrary to the government's assertions, the Order issued by this Court that set out the deadlines for the

government to complete its document production carried the full force of a judicial order.

That the Order also set a briefing schedule did not dilute the significance of the Court-

ordered document production deadlines. Also contrary to the government's assertion, the

documents that EPIC received contributed to the fund of information that the public is

using to make vital political choices. EPIC kept clear, detailed, and contemporaneous

billing records, and properly billed for reasonable time spent ensuring that the

government complied with the scheduling Order. EPIC is therefore entitled to fees on

fees, including the fees included in attached Exhibit 1, which detail the time spent on this

Reply Motion.

## ARGUMENT

## I. THE FBI MISINTERPRETS THE "SUBSTANTIALLY PREVAIL" PRECEDENT SET BY THE D.C. CIRCUIT

The FBI incorrectly argues that EPIC did not "substantially prevail" in this case

and contends that *Davy* is distinguishable. The FBI's reading misconstrues the clear

precedent set by this Court. In *Davy*, the defendant substantially prevailed when the

district court issued an order memorializing a joint stipulation by the parties establishing

dates for the agency to produced responsive documents. *Davy v. CIA*, 456 F.3d 162, 163

(D.C. Cir. 2006). As the D.C. Circuit in *Davy* explained, the "CIA was not under any

judicial direction to produce documents by specific dates; the May 4, 2001 order changed

that by requiring the Agency to produce all 'responsive documents' by the specified

dates." *Davy*, 456 F.3d at 166. The Court stated the "order was a 'judicially sanctioned

change in the legal relationship of the parties' because 'timely production of nonexempt

documents by the [CIA] could no longer be described as a voluntary change in the

defendant's conduct.'" *Id.* (*quoting Edmonds v. FBI*, 417 F.3d 1319, 1322 (D.C. Cir. 2005)).  As a result, the *Davy* court determined that the FOIA requester was eligible for fees.

Here, as in *Davy*, "[o]nce the district court issued the order, [Plaintiff] obtained an 'enforceable judgment' on the merits of his complaint. If the Agency failed to comply with the order, it faced the sanction of contempt." *Id.* (*citing Edmonds*, 417 F.3d at 1323). The defendant suggests that the order in *Davy* is distinguishable from the order in this case because "the order at issue in *Davy* was not a routine scheduling order." Def. Opp. at 8. But the Order in this case was not a "routine scheduling order"; it set out deadlines for the production of documents sought by the plaintiff, which is precisely the purpose of filing a lawsuit in a FOIA matter. Further, the Order established the agency's obligation to produce the documents sought, which would not have occurred but for the filing of the lawsuit.

In support of its contention that such orders do not provide relief for purposes of 5 U.S.C. § 552(a)(4)(E)(II), the FBI cites two district court opinions outside of the Circuit. Def. Opp. at 10. But there is no dispute within the Circuit as to the rule in *Davy*. *See, e.g., Citizens for Responsibility & Ethics in Wash. V. DOJ,* 820 F. Supp. 2d 39, 44 (D.D.C. 2011) ("*CREW*"); *Judical Watch, Inc. v. FBI,* 774 F. Supp. 2d 225, 229 (D.D.C. 2011).

The FBI also makes the remarkable claim that fees should be denied in this matter because "the FBI had promptly initiated searches and began gathering the responsive documents." Def. Opp. at 1. First, it bears noting that EPIC filed the lawsuit in this matter more than six months after submitting the FOIA Requests to the agency. Second, there was no communication from the agency between the October 19, 2012 communications

with the agency in which EPIC agreed to narrow the scope of the Second FOIA Request

and April 8, 2013, the date on which EPIC filed. Third, the defendant asks the Court to

substitute a good faith compliance standard for a clear provision of law enacted by

Congress and a bright line rule developed by this Circuit. Not only is this contrary to law,

it is impractical and would lead to much greater confusion in FOIA fee disputes.

The FBI suggests that the 2007 OPEN Government Act, which amended and

eased the FOIA attorney fee provision, calls into question the *Davy* outcome. *See* Def.

Reply at 9 fn.6. The D.C. Circuit has answered that question. *See Campaign for*

*Responsible Transplantation v. Food & Drug Admin.*, 511 F.3d 187 (D.C. Cir. 2007) and

*Judicial Watch v. FBI*, 522 F.3d 364 (D.C. Cir. 2008).

In short, the FBI's attempt to distinguish *Davy* is unavailing; EPIC has

substantially prevailed by virtue of the Court's June 28, 2013 Order which required the

defendant in a FOIA matter to produce the documents that a plaintiff in a FOIA matter

sought.

## II. THE FOUR-PRONGED TEST FOR ENTITLEMENT WEIGHS IN EPIC'S FAVOR

The four-factor test employed by this Circuit to determine entitlement of fees

clearly weighs in EPIC's favor. The four prongs of the test include "(1) the public benefit

derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the

plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding

of the requested documents." *Davy*, 550 F.3d at 1159; *See also Morley v. CIA*, 719 F.3d

689, 690 (D.C. Cir. 2013) (reaffirming the four-factor test outlined in *Davy*).

### A. The FBI Too Narrowly Interprets the Public Benefit Prong

"The public-benefit prong 'speaks for an award of [attorney's fees] where the complainant's victor is likely to add to the fund of information that citizens may use in making vital political choices.'" *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). The FBI contends that an opinion essay in the *New York Times*, cited by EPIC in support of its fee claim, "failed" to benefit the public. Def. Opp. at 11. That article, titled "The Face Scan Arrives," specifically discusses the subject matter of this FOIA request, the documents obtained as a result of this litigation, and the public interest in this topic. Here is an excerpt from that article:

> The Department of Homeland Security is not the only agency developing facial-surveillance capacities. The Federal Bureau of Investigation has spent more than $1 billion on its Next Generation Identification program, which includes facial-recognition technology. This technology is expected to be deployed as early as next year and to contain at least 12 million searchable photos. The bureau has partnerships with at least seven states that give the agency access to facial-recognition-enabled databases of driver's license photos. Ginger McCall, "The Face Scan Arrives," NYT, Aug. 29, 2013.[1]

The FBI belittles EPIC's Spotlight on Surveillance publication on the FBI's Next Generation Identification program. The purpose of EPIC, an organization established in 1994, is to focus "public attention on emerging privacy and civil liberties issues." It is entirely consistent with EPIC's core educational mission to promote public dissemination of documents of the type obtained in this FOIA matter. That also weighs in favor of EPIC in the public benefit analysis.

Furthermore, as defendant has chosen to prolong the fees matter by disputing EPIC's fee request, it is worth noting that additional articles concerning the documents obtained in this case continue to be published and should also be considered by the Court prior to the final determination on this issue. *See, e.g.*, Kaye Beach, "EPIC – The FBI's

---

[1] http://www.nytimes.com/2013/08/30/opinion/the-face-scan-arrives.html.

Next Generation Identification Program: Big Brother's ID System," AxXiom for Liberty,

Jan. 5, 2014 ("Please read in full this recent report (posted below) on the FBI's Next

Generation Identification biometric ID project by the Electronic Privacy Information

Center (EPIC).");[2] David Edelstein, "Spotlight: FBI Pushes Forward with Massive

Biometric Database Despite Privacy Risks," The Edelstein Firm, Dec. 11, 2013 ("EPIC's

Spotlight on Surveillance Project returns to put the spotlight on the Federal Bureau of

Investigation's Next Generation Identification program.").[3]

      Other articles concerning EPIC's FOIA work in this matter were also uncovered.

See, e.g., Jim White, "US Isn't Collecting Only Electronic Data On You – Huge

Biometric Database Under Construction, Too," Emptywheel, Oct. 18, 2013;[4] Dustin

Volz, "FBI's Facial Recognition Software Could Fail 20 Percent of the Time," *National*

*Journal*, Oct. 14, 2013;[5] Tim Cushing, "Facial Recognition Software That Returns

Incorrect Results 20% Of The Time Is Good Enough For The FBI," Techdirt, Oct. 15,

2013.[6]  Among this group is the article in the *National Journal* with the title "FBI's

Facial Recognition Software Could Fail 20 Percent of the Time." According to the

website, the "*National Journal* is regarded as the most credible and influential

publication in Washington, providing more than 3 million influentials in public policy

and business with the insights they need to make government work."[7]

---

[2] https://axiomamuse.wordpress.com/2014/01/05/epic-the-fbis-next-generation-identification-program-big-brothers-id-system/.

[3] http://www.305-law.com/spotlight-fbi-pushes-forward-with-massive-biometric-database-despite-privacy-risks/.

[4] http://www.emptywheel.net/2013/10/18/us-isnt-collecting-only-electronic-data-on-you-huge-biometric-database-under-construction-too/#more-38787.

[5] http://www.nationaljournal.com/daily/fbi-s-facial-recognition-software-could-fail-20-percent-of-the-time-20131014

[6] http://www.techdirt.com/articles/20131010/07182224824/facial-recognition-software-that-returns-incorrect-results-20-time-is-good-enough-fbi.shtml.

[7] National Journal, "About Us," http://www.nationaljournal.com/nj/about-us-20131001.

**B. EPIC's Interest is Entirely Public-Oriented and Non-Commercial**

As explained in EPIC's Motion of Attorney's Fees and not challenged by the FBI in its reply, EPIC is a 501(c)(3) non-profit public interest research center. *EPIC*, 241 F. Supp. 2d at 5. EPIC derived no commercial benefit from its FOIA request or lawsuit. The sole benefit was derived by the public, which benefited from the disclosure of the documents released in this case. Thus, EPIC's interest in this matter is squarely within the "scholarly, journalistic or public interest oriented" interests favored by the statute. *See, e.g., EPIC v. DHS*, 760 F. Supp. 2d 4, 44 (D.D.C. 2011). As all four factors are weighed in the assessment of entitlement for fees, EPIC's success on this prong further contributes to a favorable determination.

**C. The Fourth Prong Does Not Weigh in the FBI's Favor**

The fourth prong analyzes whether the agency had a "reasonable legal basis" for withholding records. The FBI does not contest that it violated the FOIA's statutory deadlines. As a matter of law, not only did the FBI fail to produce the documents in a timely fashion, it failed to provide a timely determination. "The statute requires that, within the relevant time period, an agency must determine whether to comply with a request . . . . It is not enough that, within the relevant time period, the agency simply decide to later decide. Therefore, within the relevant time period, the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *CREW v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013).

Given the FBI's withholding of documents, "[t]o avoid an award of costs and fees under the final factor, 'the government need only show that its position had a colorable

7

basis in law.'" *United America Financial, Inc., v. Potter*, 770 F. Supp. 2d 252, 257

(D.C.C. 2011) (*quoting Nat'l Sec. Archive v. U.S. Dep't of Def.*, 530 F. Supp. 2d 198, 205

(D.D.C. 2008)). The FBI is unable to cite any basis in law. Instead, the FBI suggests that

its backlog of FOIA requests and resource constraints provide a "reasonable basis" as

opposed to a "reasonable legal basis" for its withholdings. There is no case law that

supports such factors as a nonlegal "reasonable basis" for withholding records.

The cases the FBI cites concerning a "reasonable basis" do not assist the agency

in this matter as both cases concern FOIA matters where the Court ruled against the

petitioner on factors one through three. In *Simon v. United States*, cited by the agency, the

Court said, "while an agency's failure to meet deadlines is not to be condoned, it does not

warrant an award of fees *in and of itself*." 587 F. Supp. 1029, 1032 (D.D.C. 1984)

(emphasis added). In *Simon*, the Court had analyzed prongs 1-3 and found that none of

them favored the plaintiff. In analyzing the fourth prong, the Court did not find any basis

(legal or otherwise) for the defendant's delay but stated that mere agency delay is not a

strong enough factor by itself to warrant awarding fees. *See id.* Similarly, in *United

America Financial, Inc. v. Potter*, the Court found that prongs 1-3 did not favor the

plaintiff. In contrast though to *Simon*, the Court found that the fourth prong weighed in

favor of the defendant because the agency had a reasonable legal basis for delay based on

its assertion of Exemption 7(C). *United America Financial, Inc. v. Potter*, 770 F. Supp.

2d 252, 258 (D.D.C. 2011).

In the present case, prongs 1-3 clearly support EPIC and the fourth prong favors

EPIC too – or at best is neutral for both parties. Given that the FBI had no legal basis for

withholding these records and the fact that prongs 1-3 clearly weigh in favor of EPIC, the agency must reimburse EPIC for its costs and fees.

## III. EPIC'S BILL OF $15,851.50 IN FEES AND COSTS IS REASONABLE

"The D.C. Circuit 'has been very explicit about what documentation is necessary to recover attorneys fees.' *Weisberg v. Webster*, 749 F.2d 864, 872 (D.C. Cir. 1984). To obtain a fee award, the movant must provide 'contemporaneous, complete, and standardized time records which accurately reflect the work done by each attorney.'" *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). As EPIC has previously stated in its Motion for Attorneys Fees and Costs, EPIC kept, accurate, complete, contemporaneous, and detailed records. Furthermore, the hours that EPIC billed were reasonable and supported by its records.

### A.  The Hours Spent Preparing the Complaint Were Reasonable

The FBI curiously asserts that the "simple" requirements of the FOIA should have allowed EPIC to put together a "boilerplate" complaint regarding the FBI's failure to respond to EPIC's request. In a FOIA fee award decision from November 2013, this Court ruled on a similar argument from the Department of Homeland Security. In that case, DHS contested the hours billed for "a 9-page boilerplate complaint for this simple, straightforward FOIA case." *EPIC v. DHS*, CV 11-2261 (JDB), 2013 WL 6047561 at *9 (D.D.C. Nov. 15, 2013). This Court responded, "If FOIA's statutory requirements as applied to this case were so 'simple' and 'straightforward,' DHS might have been better served by complying with them – rather than by ignoring statutory deadlines and meeting their legal obligations only upon being served with a complaint in federal court." *Id*. The instant case mirrors this situation exactly. EPIC filed a complaint with this Court because

the FBI failed to comply with the law. EPIC is uniquely qualified to interpret and explain technical data related to the mechanics of facial recognition technology, but EPIC could not access that data without filing a lawsuit. Neither EPIC nor the FBI wants to incur the time and money costs associated with litigation, but in order to pursue its mission fully, EPIC must litigate where the FBI will not comply with the FOIA on its own. *See id*.

**B.      EPIC Can Recover Fees For Reviewing FBI's Document Production**

The FBI incorrectly argues that EPIC cannot bill for any time spent on litigation following this Court's Scheduling Order. The FBI states that EPIC's review of the agency's production "was performed *after* EPIC obtained the scheduling order – and EPIC did not later obtain any relief from the Court based on its review of the released documents." Def. Opp. at 20. In order for this to be true, EPIC would have to assume the adequacy of the FBI's document production. It is an absurd position that assumes a FOIA plaintiff will never contest the sufficiency of a search, the assertion of exemptions, or the segregation of documents that could be disclosed. All of these activities must be undertaken by the FOIA attorney in the discharge of his or her professional obligations. EPIC needed to review the disclosures to determine whether to pursue additional relief from the Court.

Judge Bates has recently granted EPIC attorneys' fees for time spent reviewing agency disclosures. EPIC argued that review of documents received during the course of FOIA litigation constitutes billable hours, essential to the work of a FOIA attorney. Judge Bates adopted EPIC's argument verbatim, ruling, "It would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review an agency's disclosure for sufficiency and proper withholding during the course of its FOIA litigation." *EPIC v.*

*DHS*, CV 11-2261 (JDB), 2013 WL 6047561 at *9 (D.D.C. Nov. 15, 2013).  EPIC is only seeking fees for review of documents produced during this litigation, and the FBI "'has failed to produce any evidence that this time billed by Plaintiff's attorneys was not spent for the purpose of litigating this case.'" *Id.* (citing *Rosenfeld v. DOJ*, 904 F. Supp. 2d 988, 1005 (N.D. Cal. 2012)).

> **C.  EPIC Spent a Reasonable Amount of Time Discussing the Effect of the Lapse In Government Appropriations and the Significance of the Court's Scheduling Order**

The FBI contests certain fees, concerning fractional hours, designation of activities, and increments in attorneys' rates. Def. Opp. at 22-23. This Court has addressed agencies' "broader concerns" in past attorneys' fees disputes, including concerns about non-contemporaneous timekeeping, billing by the hour rather than the tenth of an hour, and failing to itemize the activities performed by individual attorneys. *See e.g., CREW v. DOJ*, 825 F.Supp. 2d 226, 229 (D.D.C. 2011). However, this Court has specifically noted that "it declines to engage in the kind of 'nitpicking' invited by DOJ's smaller-scale objections." *Id*. at 229-230 (citing *Baker v. D.C. Public Schools*, 815 F.Supp. 2d 102, 109, 2011 WL 4507251 at *4 (D.D.C. 2011) and *Alfonso v. District of Columbia*, 464 F.Supp. 2d 1, 5-6 (D.D.C. 2011) (rejecting 'defendants' invitation to "conduct a minute evaluation of each phase or category of counsel's work"')). The FBI invites this Court to engage in the kind of "nitpicking" that this Court has repeatedly stated that it disfavors.

Furthermore, the incidents identified by the FBI as "meritless," "not productive," and "unnecessary" actually reflect unusual circumstances that EPIC properly spent a small amount of time discussing. For instance, the FBI points to the "3.7 hours

($1,166.50) billed by its attorneys on October 7, 2013, in connection with Defendant's motion to stay the summary judgment briefing schedule due to the lapse in appropriations." Def. Opp. at 22. The lapse of government appropriations constituted a novel litigation obstacle that EPIC needed to resolve, as filings were due during that time. EPIC received notification from the Third Circuit that it expected all government agencies to meet their litigation deadlines, and EPIC acted accordingly on that information. EPIC properly discussed and researched the expectations of the D.C. Circuit in light of the agency's motion.

Similarly, the FBI calls attention to its December 3, 2013 deadline to file a motion for summary judgment with the Court. The FBI mischaracterizes EPIC's position that "Defendant's counsel should have proceeded to file a motion for summary judgment within 30 days after the Court's order lifting the stay was granted due to the lapse in appropriations, even though EPIC was not contesting the redactions." Def. Opp. at 22. In fact, EPIC did not contend that the FBI should have filed a motion for summary judgment. EPIC's discussions centered around the fact that the FBI had not informed the Court that it would not file an opening brief on the merits. In EPIC's previous litigation experience, counsel for the government had never let a Court-ordered deadline pass without keeping the Court abreast of the case status. EPIC's discussions, as reflected accurately and contemporaneously in its billing records, focused on the appropriate next steps to take in such a situation.

**D. EPIC's Practice of Assigning Two Junior Attorneys to a Case Reflects An Efficient Allocation of Resources**

The FBI repeatedly mischaracterizes EPIC's practice of including all attorneys involved in a case on phone calls. The FBI refers to this practice as "excessive billing,"

and even "triple-billing." Def. Opp. at 22-3. In fact, EPIC's practice of assigning two junior attorneys to a case – one lead attorney and one FOIA expert – reflects an efficient allocation of EPIC's time and resources. A close look at the billing records reveals that the work performed by each of the attorneys on this case was distinct and clearly defined. Dkt. 15 Ex. 1. Mr. Brody, and then, after his departure, Mr. Scott, performed the work of the lead attorney, including leading phone calls, reviewing the document production, and writing the factual portions of the fees motion briefs. Ms. McCall, and then, after her departure, Ms. Horwitz, performed the work of the FOIA attorney, including advising the lead attorney as to the sufficiency of the agency's responses to EPIC's lawsuit and writing the legal portions of the fees motion briefs. Both attorneys participated on the phone calls with opposing counsel in order to stay informed about the progress of the case. In this way, EPIC was able to distribute the litigation work to the attorney who could complete the task most efficiently, without causing an overlap in the type of work performed. Mr. Rotenberg, a leading expert in FOIA law with a much higher billing rate, seeks to provide guidance for the younger attorneys but also to minimize his billable time in these matters. The bulk of the work was performed by junior attorneys billing at the lowest possible attorney rate provided by the Laffey Matrix.

### E.  The Laffey Matrix Cannot Reasonably Be Interpreted to Exclude Lawyers In Their First Year of Practice

The FBI incorrectly asserts that attorneys who have been practicing for less than a year are not accounted for in the Laffey Matrix. Def. Opp. at 24. The confusion arises from a row in the Laffey Matrix concerning experience designated "1-3 years." As the Laffey Matrix is intended to provide a standard rate for legal services based on years of experience, the straightforward interpretation of the designation is that it includes those

attorneys who have recently passed the bar. In further support of this interpretation is the designation of the adjoining row "Paralegals and Law Clerks." As a person recently admitted to practice law would necessarily be excluded from this category, they should be included in the lowest fee recovery standard provided, which is the "1-3 years" designation. If the Department of Justice chooses to set forward a different standard for first year attorneys, a different outcome may result. But until that time, first year attorneys are properly entitled under the Laffey Matrix to $245 per hour.

## CONCLUSION

EPIC is eligible for and entitled to recover its fees and costs from the FBI in this matter. EPIC's fees are reasonable and supported by the proper documentation. The Court should award EPIC a total of $22,123.50 in fees and costs, as documented in the Exhibits attached to EPIC's Motion for Fees and Exhibit 1 to this motion.